UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHENMING HOLDINGS (HONG KONG) LIMITED, *a Hong Kong limited company,*<br><br>Plaintiff,<br><br>-against-<br><br>JOHN DOES 1-10, individuals and/or entities whose names are currently unknown to Plaintiff,<br><br>Defendants. | Civil Case No. 1:24-cv-00935-KPF<br><br>**DELCARATION BY Xu Xianhong** |

     I, Xu Xianhong, the undersigned, hereby declare and state under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

     1.    I am a partner at the law firm King & Wood Mallesons Beijing. My firm is counsel to Chenming Holdings (Hong Kong) Limited ("**Chenming**"). I have been representing Chenming in matters related to the underlying loan transactions and the disputes arising thereunder since April 2023. I am familiar with the facts set forth herein, and if called as a witness, I could and would testify competently to those facts under oath.[1]

     2.    My firm was retained by Chenming to advise on the disputes arising from the loan transactions that Chenming entered into respectively with Astor Asset Management 2 Limited ("**Astor2**"), Union Pacific Capital 1 Ltd ("**UPC1**") and Cornelius Vanderbilt Capital Management Ltd ("**Vanderbilt**"). Astor2, UPC1 and Vanderbilt are hereby referred to as the "**Lenders**".

_____

[1] Capitalized terms shall have the same meaning prescribed to them under the Complaint.

1

3. Upon the engagement of our firm, we were instructed that Chenming, upon knowledge and belief, thought it had been defrauded by the Lenders. In particular, Chenming suspected that the Collateral that it had provided to secure the loans had been improperly sold or otherwise disposed of, which, if were the case, would severely undermine Chenming's interest and impact its performance of the loan agreements.

4. Based on the facts provided to us, we understood that there was an arbitration agreement under the respective loan agreement with each of the Lenders. Nevertheless, since the Lenders were obviously shell companies and Chenming did not know where the management, if any, or the employees of the Lenders were located, we were of the view that commencing arbitration merely against those shell companies would be futile.

5. As will be explained below, we understood it might be beneficial for Chenming to further investigate into the facts, especially the status of the Collateral, through all possible means.

**Hong Kong Court Proceedings**

6. We noted that this matter has some connection with Hong Kong, such as the fact that Weiser, the custodian broker designated by the Lenders, opened one or more accounts with financial institutions in Hong Kong. Accordingly, for the purpose of obtaining further information, I referred Chenming to King & Wood Mallesons Hong Kong office ("**KWM HK**"), which provided necessary support in Hong Kong.

7. In July 2023, KWM HK, on behalf of Chenming, filed an application to the High Court of Hong Kong seeking a Norwich Pharmacal Order requiring non-party disclosure from China Merchants Securities (HK) Co Limited ("**CMS**") and ICBC International Securities

Limited ("**ICBCI**") regarding the transaction documents of the accounts that received the Collateral under the Loan Agreements.

8. On around October 4, 2023, CMS an ICBCI disclosed certain transaction documents to Chenming upon the orders by the High Court of Hong Kong. I, with the assistance of my team, perused such documents.

9. The disclosed documents indicate that Lenders began transferring or trading the Collateral shortly after they were deposited and *before* the occurrence of the purported Event of Default. Among others,

1) Astor2 had transferred or sold:
   - the total of the first tranche of the Collateral, being 5,000,000 Class B shares, on May 15, 2020, only 38 days after them being deposited on April 7, 2020;
   - by December 8, 2020 or earlier, the entirety of 110,000,000 Class B shares that were deposited as Collateral on April 7, July 20 and August 28, 2020; and
   - by January 27, 2021, the entirety of the 95,000,000 Class H shares that were deposited as Collateral on October 27, November 24 and November 26, 2020 and 19 January 2021.

2) By August 4, 2021, Vanderbilt had transferred or sold 58,414,000 Class H shares that were deposited as Collateral on April 23 and July 5, 2021. Upon information and belief, the remaining 414,000 Class H shares are held in custody by Weiser, and 20,717,563 Class B shares are held in custody by Amira Capital Limited which was designated by Vanderbilt.

3

    3) By January 21, 2021, UPC1 had transferred or sold the entirety of the 80,000,000 Class B shares that were deposited as Collateral on November 27, 2020 and January 7, 2021.

    4) Lenders received HK$ 540,983,978.63, approximately US$69,280,000, in proceeds, by trading a total of 185,000,000 Class B shares. Lenders also transferred 5,000,000 Class B shares to a third party, DBS Vickers Securities.

    5) Lenders received HK$321,027,564.16, approximately over US$41,110,000 in proceeds, by trading a total of 77,462,000 Class H shares. Lenders also transferred 75,538,000 Class H shares to third parties including Citibank and Zundiao Securities Limited and Fidelity Clearing Canada.

10. Upon disclosure of above documents, the Hong Kong proceedings are now closed.

**The LCIA Arbitration**

11. I represent Chenming in the LCIA Arbitration No: 235955 that was commenced by UPC1 on July 18, 2023.

12. UPC1 changed the amount of its claims multiple times.

    1) By its Request for Arbitration, UPC1 sought, among other things, declaratory judgment and damages for the alleged breach and disparaging statements made by Chenming in the amount of around US$ 264,423,911.01.

    2) On August 17, 2023, UPC1 suddenly changed its position and revised the estimated value of its claims from the whopping US$ 264,423,911.01 to $1.00. The explanation offered by UPC1 was that it decided to lower the amount of its claimed damages "*based solely upon the par value of the shares pledge by [Chenming] as collateral*

*for the loan*" and "*given the shares have no par value, this claim should now be valued as a nominal amount of $1.00 USD.*"

3) On or around October 31, 2023, UPC1 further adjusted its claims by way of its Statement of Claim in that arbitration. Among other things, UPC1 claimed for forfeiture of the Collateral and monetary damages in the amount of US$ 1,000,000.

13. Chenming counterclaimed, among other things, for redemption of the Collateral, alternatively, the difference between the value of the Collateral and the amount of the loan as at the date of the appropriation of the Collateral or the Award, and the return of paid interests and fees.

14. UPC1 is represented by a Mr. Fred W. Freitag IV, Esq. in the LCIA Arbitration. However, on August 29, 2023, Mr. Freitag submitted a letter dated August 28, 2023, issued by a law firm Jurist IQ confirming that Jurist IQ had paid the deposit of arbitration fee on behalf of UPC1. In that letter, Jurist IQ explicitly stated that it "*regularly acts as general counsel for UPC*".

15. Based on prior communications between Astor2 and Chenming, Jurist IQ also retained a "*client escrow account*" for Astor2 and received repayments of loan on behalf of Astor2 on February 9 and 10, 2023.

16. On October 19, 2023, in his communication with the LCIA, Mr. Freitag inadvertently attached documents from what appears to be another arbitration concerning a similar loan dispute, where Astor Asset Management 1 Limited ("**Astor1**") was the claimant and Mr. Freitag represented Astor1. Upon information and belief, Astor1 and Astor2 are affiliated entities.

17. In the LCIA Arbitration, UPC1 opposed to any procedure for discovery, witness statements, expert reports or evidentiary hearing. Although the arbitral tribunal has ordered document production which are currently scheduled to take place during April to June 2024, it is doubtful whether UPC1 might cooperate in view of the history of this matter and the approach UPC1 had engaged in the LCIA Arbitration.

18. Moreover, whether there will be an evidentiary hearing is subject to the decision of the arbitral tribunal in due course. In any event, in view of the current schedule, any such hearing is not likely to take place until late 2024.

**Investigation by Control Risks**

19. In or around October 2022, I was informed by Chenming that potential dispute might arise in relation to the performance of the Vanderbilt Agreement. Since the agreement was governed by Singapore law, I introduced Chenming to King & Wood Mallesons Singapore office ("**KWM Singapore**") to assist. Pursuant to Chenming's directions, KWM Singapore hired an investigative company Control Risks to conduct independent investigations on Vanderbilt.

20. Control Risks provided a report dated November 12, 2022 summarizing the results of its investigation. The scope of Control Risks' investigative work broadly covered public records (such as company registration information and corporate filings, court documents, websites, etc.) available in multiple jurisdictions, including Hong Kong, United States, Canada, and Mainland China.

21. Control Risks identified legal proceedings involving Vanderbilt and other Lenders or their affiliates. However, Control Risks was unable to identify the persons behind the Lenders or locate the Lenders' physical addresses based on publicly available information.

I declare under the penalty of perjury that the foregoing is true and correct.

Date: February 7, 2024
Beijing, China

_____
Xu Xianhong

**CERTIFICATE OF SERVICE**

      I hereby certify that I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  Since the identities of Defendants are unknown to Plaintiff, I was unable to send a copy of the foregoing document and the accompanying motion papers to Defendants or their counsel at this time.

      By:   */s/ Vincent Filardo, Jr.*
            Vincent Filardo, Jr.