

September 13, 2024

BRYAN CAVE LEIGHTON PAISNER LLP
1290 Avenue of the Americas
New York NY 10104 3300
T: +1 212 541 2000
F: +1 212 541 4630
bclplaw.com

Eric Rieder
Partner
Direct:  +1 212 541 2057
Fax:  +1 212 541 1457
eric.rieder@bclplaw.com

Hon. Katherine Polk Failla
United States District Court, Southern District of New York
40 Foley Square
New York, NY 10007

**VIA ECF**

Re:   Chenming Holdings (Hong Kong) Limited v. Val Sklarov et al., 24-cv-935
      Servicer Defendants' Request for a Pre-Motion Conference

Dear Judge Failla:

This firm represents defendants Sierra Universal Corp, UPC Holdings Ltd, Lviv Estate Holdings Ltd, and C Vanderbilt Management Ltd. (collectively, "Servicer Defendants").  Pursuant to Rule 4.A of Your Honor's Individual Rules of Practice the Servicer Defendants submit this letter to request a pre-motion conference for their motion to dismiss the Amended Complaint as against them for failure to state a claim.  Servicer Defendants' motion is not on consent.

## Factual Background

Plaintiff's claims arise out of loan agreements between Plaintiff, the parent company of publicly traded Chenming Paper Holdings Limited ("ListCo"), and three non-party lenders ("Lenders").  (*See* Dkt. #30 ("Compl."), ¶ 28.)  Pursuant to such loan agreements ("Loan Agreements"), Plaintiff received $97 million in loan proceeds, for which it pledged approximately 233 million shares of ListCo shares.  (*Id.* ¶¶ 118.)  The Servicer Defendants acted as loan servicers for the Lenders by receiving loan payments from Plaintiff.  (*Id.*, ¶ 128.)

In sum, Plaintiff attempts to allege a fraudulent scheme in which the Lenders (i) declared defaults under the Loan Agreements, (ii) used those defaults as a basis to compel Plaintiff to provide additional shares or cash as collateral, (iii) ultimately obtained repayment of the principal on two loans and some repayment on the others, but (iv) never returned the collateral shares and instead liquidated them.  (*See id.*, ¶¶ 31, 119, 120.)  Rather than sue the Lenders, Plaintiff asserts claims against the Servicer Defendants and against individual defendants Val Sklarov, Tetyana Sklarov and Jaitegh Singh (collectively, the "Individual Defendants"), who are alleged to control the Lenders and the Servicer Defendants.  (*Id.*, ¶ 18.)

The Complaint asserts seven claims.  The first, for Fraud in the Inducement; the second, for Fraud; and the fourth, for Conversion, are asserted solely against the Individual Defendants.  The Servicer Defendants (and additional defendant Jurist IQ Corp.) are named as defendants in the third, for Aiding and Abetting Fraud; the fifth, for Conspiracy to Commit Fraud; the sixth, for Conspiracy to Commit Conversion; and the seventh, for Unjust Enrichment.  The proposed motion will establish that the Amended Complaint fails to state a claim against the Servicer Defendants on the grounds set forth below.

615648503



### Aiding and Abetting Fraud and Conspiracy to Commit Fraud (Claims 3 and 5)

Initially, Plaintiff's Aiding and Abetting Fraud and Conspiracy to Commit Fraud claims should be dismissed because the Complaint fails to state an underlying fraud claim. Although Plaintiff's first and second claims against the Individual Defendants allege fraud, each is based on the allegation that Plaintiff executed the Loan Agreements and delivered Collateral Shares in reliance on alleged misrepresentations by the Individual Defendants, through the Lenders, that they would return the Collateral Shares to Plaintiff upon full repayment of the loans—*i.e.* the precise subject of the Loan Agreements. (Compl., ¶¶ 108, 117.) Plaintiff also accuses the Individual Defendants in its second count of "manufacturing false Events of Default," also under the terms of the Loan Agreements. (*Id.*, 119.) Thus, Plaintiff fails to state a fraud claim because the facts alleged are indistinguishable from an assertion of breach of the Loan Agreements. *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 416 (2d Cir. 2006) ("[A] fraud claim may not be used as a means of restating what is, in substance, a claim for breach of contract.")

The fraud claims also fail because they lack the required elements of fraud, including the lack of a misrepresentation of fact, lack of specificity, and lack of reliance.

Plaintiff does not adequately plead a misrepresentation of fact. The key misrepresentation allegedly made by the Individual Defendants is that the Lenders, in the future, would return the Collateral Shares upon full repayment of the Loans in accordance with the Loan Agreements. (Compl., ¶¶ 108, 121.) Such statements about future expectations cannot form the basis of a fraud claim. *Deutsche Bank Nat'l Trust Co. v. Sinclair*, 68 A.D.3d 914, 916 (2d Dep't 2009) ("[A] fraud claim must be based upon a misrepresentation of an existing fact rather than upon an expression of future expectations."). This doctrine is particularly applicable here, where return of the Collateral Shares was conditioned on Plaintiff's full compliance with the Loan Agreements, which Plaintiff has not alleged.

As to particularity, Plaintiff, throughout the Amended Complaint, alleges that "Defendants," "Corporate Defendants," or "Individual Defendants" misled it, but Plaintiff does not allege the "who, what, when, and where" of these allegations, as required by Rule 9(b). (*See, e.g.*, Compl., ¶¶ 31, 45, 47, 56, 66, 84, 90, 111, 117, 128, 137, 143, 148.)

Plaintiff also fails to show reliance on extra-contractual representations, as required to plead a fraud claim. Along with other provisions demonstrating the insufficiency of Plaintiff's claims, in the Loan Agreements, Plaintiff explicitly acknowledged that it was *not relying* on any representations concerning the loans at issue and that it (i) understood the risks inherent in securities lending, (ii) was represented by legal counsel in connection with such Loan Agreement, and (iii) decided to enter into the agreement voluntarily. Such provisions bar assertion of fraud claims based on extra-contractual representations. *See 28th Highline Assoc., L.L.C. v Roache*, 18 CIV. 1468, 2019 WL 917208, *10 (S.D.N.Y. Feb. 25, 2019).

Along with the failures of the primary fraud claim, Plaintiff's aiding and abetting fraud claim is insufficient because it does not assert actual knowledge, substantial assistance, or causation by the Servicer Defendants. Plaintiff offers only a conclusory assertion that the "Corporate Defendants had actual knowledge of the Individual Defendants' fraud." (Compl., ¶ 125). First, this allegation impermissibly lumps together a group of defendants in a conclusory manner, which is fatal to the claim. Moreover, Plaintiff concedes that the Servicer Defendants <u>were incorporated after Plaintiff executed the relevant Loan Agreements</u>. (*Id.* ¶ 126.) Given that the purported fraud is primarily based on statements that allegedly caused Plaintiff to enter into the Loan Agreements (*id.*, ¶¶108, 121), the Servicer Defendants could not have knowledge of the alleged fraud or provide any assistance to it. Plaintiff alleges at most that the Servicer Defendants' bank accounts were used to accept loan payments from Plaintiff. (Compl., ¶ 128.) That Plaintiff's regular loan payments were made to bank accounts in the name of the Servicer Defendants does not rise to the level of "substantial assistance" with any fraud.



Plaintiff's conspiracy to commit fraud claim also fails because Plaintiff alleges neither an agreement between all the Defendants to carry out a conspiracy to commit fraud nor an overt act in furtherance of such agreement. Although Plaintiff conclusively alleges that an agreement to commit fraud existed between all Defendants, it does not allege an overt act by the Servicer Defendants, which do not hold nor ever held the Collateral Shares. *Boone v. Codispoti & Associates P.C.*, No. 15-1391, 2015 WL 5853843,*4 (S.D.N.Y. Oct. 7, 2015) (civil conspiracy claim dismissed because plaintiff "does not plead facts sufficient to support an inference of an agreement to defraud [p]laintiff.")

### Conspiracy to Commit Conversion (Claim 6)

Plaintiff alleges that the Servicer Defendants acted in concert with the Lenders and agreed and conspired to commit conversion against Plaintiff. (Compl., ¶ 143.) Like its fraud claim, however, Plaintiff's primary conversion claim is impermissibly indistinguishable from a breach of contract claim in connection with the Loan Agreements, making it invalid. *Command Cinema Corp. v. VCA Labs, Inc.*, 464 F. Supp. 2d 191, 199 (S.D.N.Y. 2006). Plaintiff also never alleges that the Servicer Defendants had any dominion or control over the Collateral Shares (*see id.*, ¶ 18). *Moses v. Martin*, 360 F. Supp. 2d 533, 541 (S.D.N.Y. 2004) (citation and internal quotation marks omitted). Instead, Plaintiff asserts that the *Lenders* exercised unauthorized dominion and control over the Collateral Shares, including conclusory allegations that the Individual Defendants control the Lenders, yet never pleads facts showing that Lenders were not entitled to withhold the Collateral Shares under the Loan Agreements. (Compl., ¶ 133).

Plaintiff also fails to specify an agreement between the Defendants or any specific overt act by each Servicer Defendant, and impermissibly relies on conclusory allegations that lump all the Defendants together. (*See* Compl., ¶ 143). These allegations are insufficient, and Plaintiff's conspiracy to commit conversion claim should be dismissed.

### Unjust Enrichment (Claim 7)

Plaintiff's unjust enrichment claim is based on the allegation that all Defendants "exercised unauthorized dominion over the Collateral Shares" by "refusing to return the Collateral Shares to Plaintiff and unlawfully transferring and selling the Collateral Shares for their own financial gain." (Compl., ¶ 148.)

This claim should be dismissed as duplicative of its fraud and conversion claims. The claim is also invalid since unjust enrichment generally will not stand where there is a contract governing the dispute at issue. *Conde Panama LLC v AECOS, Ltd.*, 19-CV-622, 2020 WL 2834858, *4 (S.D.N.Y. June 1, 2020) ("[R]elief on a theory of unjust enrichment is unavailable where an express contract covers the subject matter.") (citations and quotations omitted). There is no dispute that Plaintiff entered into Loan Agreements with the Lenders that set forth all of the terms and conditions governing the loans at issue, including the conditions upon which the Collateral Shares may be returned to Plaintiff. (Compl., ¶¶ 38, 53, 63.) Under these circumstances, Plaintiff's unjust enrichment claim should be dismissed.

Moreover, Plaintiff fails to allege how the Servicer Defendants were enriched or benefitted from the Lenders withholding the Collateral Shares from Plaintiff. *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield, Inc.*, 448 F.3d 573, 586 (2d Cir. 2006) (internal citations and quotation marks omitted). Indeed, Plaintiff alleges that the Individual Defendants, through the Lenders—not the Servicer Defendants—exercised an unauthorized dominion over the Collateral Shares and sold them (*id.*, ¶ 119), and that the Individual Defendants—not the Servicer Defendants—"realized significant gains through their secret sales of the Collateral Shares" (*id.*, ¶ 133). Plaintiff's failure to allege that the Servicer Defendants had any ability to control, influence, or derive any benefit from the Collateral Shares, or that restitution could even be sought from the Servicer Defendants, is fatal to their unjust enrichment claim.

Hon. Katherine Polk Failla
September 13, 2024
Page 4



Very truly yours,

*/s/ Eric Rieder*

**Eric Rieder**
**Partner**