
500 Fifth Avenue
50th Floor
New York, New York 10110

T +1 212 319 4755

www.kwm.com


Via ECF
Honorable Katherine Polk Failla
United States District Court, Southern District of New York
40 Foley Square, Room 2103
New York, NY 10007

Re:  *Chenming Holdings (Hong Kong) Limited v. Sklarov et al.,* Case No. 1:24-cv-00935-KPF

Dear Judge Failla:

    Plaintiff Chenming Holdings (Hong Kong) Limited ("Plaintiff") respectfully submits this letter pursuant to Rule 4(A) of Your Honor's Individual Practices ("Rule") and in response to the pre-motion letters of the Servicer Defendants[1] and Defendants Jaitegh "JT" Singh and Jurist IQ Corp. ("Jurist," together with Singh and Servicer Defendants, "Moving Defendants"). *See* ECF Nos. 61, 64.

    The undersigned has had multiple exchanges[2] with counsel for Moving Defendants in which the parties discussed the deadlines for Moving Defendants to respond to the first Amended Complaint ("FAC") and their request for additional time to respond. Moving Defendants did not reveal their intent to file a motion to dismiss the FAC or request that Plaintiff consent to such a motion. Had the parties' discussed the merits of the proposed motions, we may have been able to conduct this pre-motion practice in a more orderly fashion, including, if agreeable, a proposal for the timing of any dispositive motion, and briefing schedule for the same, before making the instant submissions to the Court.

    As alleged in the FAC, defendants engaged in a multi-year calculated scheme to defraud Plaintiff by posing as legitimate financial institutions and their principals, misrepresenting financing opportunities to induce Plaintiff to enter sham loan transactions with shell entities controlled by defendants and provide valuable shares of stock as collateral ("Collateral Shares"), fabricating events of default to coerce Plaintiff to deposit additional cash and Collateral Shares, before quickly misappropriating and unlawfully disposing the Collateral Shares to their own benefit. *See* FAC ¶¶ 27-37. The FAC also discusses other legal actions involving defendants Singh and his long-time collaborator Val Sklarov which reveal defendants' *modus operandi* in committing similar stock-loan frauds. *See id*. ¶ 101. Indeed, this same scheme perpetrated by the same principal defendants against other unwitting victims is currently being litigated in the High Court of Justice in London, England and in this Court before Judge Kaplan. On September 9, Judge Kaplan ordered discovery on Singh and Jurist in connection with the English action brought against Sklarov, Astor Asset Management 3 Limited, Vanderbilt, and Weiser[3]. *See In Re: Pliego et al.,* Case No. 1:24-mc-00394-LAK (S.D.N.Y.), ECF No. 9. In that action, claimants alleged that (i)

---

[1] Defendants Sierra Universal Corp, UPC Holdings Ltd, Lviv Estate Holdings Ltd, and C Vanderbilt Management Ltd. are collectively referred to as Servicer Defendants. *See* ECF No. 61,
[2] On August 21, Plaintiff agreed to extend Defendants Singh and Jurist's deadline to respond from September 3 to September 13. The parties also conferred on August 15 and September 4, 2024. On August 9, Plaintiff consented via email to extend Servicer Defendants' deadline to respond to the FAC until September 13.
[3] Cornelius Vanderbilt Capital Management Ltd. ("Vanderbilt") is the Lender of the Vanderbilt Loan. Weiser Global Capital Markets ("Weiser") is the custodian broker in the Loan transactions. *See* SAC ¶¶ 17, 40.



Sklarov and his associates misappropriated shares worth over $290 million, and (ii) Jurist holds or processed $272 million in proceeds relating to the misappropriated shares.[4]  *See id*. ECF No. 4.

### A. The Fraud Claims Are Sufficiently Distinct from a Claim for Breach of Contract

Moving Defendants baselessly allege that the underlying fraud claims are "indistinguishable" from a claim for breach of the Loan Agreements.  New York law specifically recognizes a cause of action for "fraud in the inducement" when the misrepresentations underlying the alleged fraud are "collateral to the contract they induced."  *See Pentacon BV v. Vanderhaegen*, No. 23 CIV. 2172 (KPF), 2024 WL 1255992, at *13 (S.D.N.Y. Mar. 25, 2024), *reconsideration denied*, No. 23 CIV. 2172 (KPF), 2024 WL 3835334 (S.D.N.Y. Aug. 15, 2024) (Failla, J.).  The FAC alleges that defendants fraudulently stated that they intended to provide financing to Plaintiff and executed the Loan Agreements under three different fictious names, thereby creating the false appearance that they were legitimate financial institutions to induce Plaintiff to enter the loan transactions and turn over the Collateral Shares.  *See* FAC ¶¶ 27, 29, 117-18.  These misrepresentations are collateral to, and serve as an inducement of, the Loan Agreements.[5]  *See WIT Holding Corp. v. Klein*, 724 N.Y.S.2d 66, 68 (2d Dep't 2001).  In these premises, Moving Defendants' assertion that Plaintiff's fraud claims are improperly premised upon statements about future expectations to perform is without merit.

Moreover, Plaintiff has pled with particularity multiple misrepresentations by defendants, including Singh and Jurist, in connection with fraudulent Margin Call notices and threats to forfeit the Collateral Shares made as cover for their misappropriation of the same. *See* FAC ¶¶ 31, 43, 45-47, 61.  For example, defendants misrepresented that a fabricated "loan committee" would approve and "swift[ly] process" the return of the Collateral Shares, to induce Plaintiff to make full repayment on the loan.  *Id*.

### B. The Fraud Claims Are Plead with the Requisite Level of Particularity

Moving Defendants argue the FAC does not plead fraud with particularity against each defendant.  That argument is meritless for several reasons.  All the alleged misrepresentations in the FAC are attributable and imputed to all defendants.  *See Pentacon BV*, 2024 WL 1255992, at * 14-15 (finding justification for attributing the alleged misrepresentations to individual and three corporate defendants where individual defendant "was empowered to" both "effectuate the [transaction] and "benefit therefrom only because of and through this control of other [corporate] defendants"); *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 233 (2d Cir.1999) (imputing misrepresentations by co-defendants to other defendants who had engaged in the conspiracy to defraud).  Moreover, it is unnecessary to specify "statement[s] contained in the various communications containing the alleged misrepresentations" at the pleading stage.  *See Pentacon BV*, 2024 WL 1255992, at *18 (holding it unnecessary "for Plaintiffs to have identified the author of any of the allegedly misleading statements or reports that were sent to them by Vanderhaegen"); *GEM Advisors, Inc. v. Corporacion Sidenor, S.A.*, 667 F. Supp. 2d 308, 332, n.9 (S.D.N.Y. 2009).

### C. The Aiding and Abetting Fraud Claims Are Adequately Pled

---

[4] The FAC alleges that Singh received $21 million in fraudulent proceeds in the underlying fraud.  *See* FAC ¶ 98.  Nevertheless, Singh and Jurist remarkably assert that there is "no basis to infer that Mr. Singh or Jurist kept $21 million" and that they merely played the role "as an escrow agent facilitating the receipt and transfer of payments."  *See* ECF No. 64, at 2 n. 2.

[5] Moving Defendants' reliance on provisions in the Loan Agreements is misplaced pursuant to the peculiar knowledge exception.  *See DIMON Inc. v. Folium, Inc.*, 48 F. Supp. 2d 359, 368 (S.D.N.Y. 1999).



Jurist and Servicer Defendants assert that they could not have knowledge of the fraud or provided any assistance to it because they were incorporated *after* the Loans were executed. This ignores the allegations that the Servicer Defendants were established by Individual Defendants for the purpose of facilitating and perpetrating the fraud in which they all conspired. Individual Defendants established Servicer Defendants shortly after the entry of the sham loan transactions so that they could open bank accounts under the names of Servicer Defendants to extract payments from Plaintiff. *See* FAC ¶¶ 23-26. Moreover, the fraudulent scheme conspicuously continued beyond loan execution. Defendant Jurist misrepresented facts about purported anti-money laundering review to stall the return of the Collateral Shares and issued fraudulent demand letters. *See id*. ¶ 46.

### D. The FAC Sufficiently Alleges Agreement to Conspire and Over Acts for Conspiracy

The FAC adequately alleges an agreement to conspire between defendants. The FAC pleads with particularity the interrelationships among the defendants, including that the Individual Defendants are identified as sole shareholder, ultimate beneficial owner, officer, director, etc. of *Jurist and Servicer Defendants* in corporate filings and/or bank records. *See* FAC ¶¶ 17-26; *see Eaves v. Designs for Fin., Inc.*, 785 F.Supp.2d 229, 257–58 (S.D.N.Y.2011) (plaintiffs sufficiently pleaded conspiracy to defraud between company and counsel where counsel was "specifically hired by [company]" to advise on the underlying fraud scheme); *First Fed. Sav. & Loan Ass'n of Pittsburgh v. Oppenheim, Appel, Dixon & Co.*, 629 F.Supp. 427, 444 (S.D.N.Y.1986) ("allegations of intimate business relationship between defendant and third-party, [defendant's] knowledge of [third party's] unlawful acts, and fraudulent misrepresentations strongly indicate an agreement").

The FAC also sufficiently alleges relevant overt acts. It is not necessary that each defendant commit an overt act, "[a]ll that is necessary is that a member of the conspiracy commit an overt act." *See Martin Hilti Fam. Tr. v. Knoedler Gallery, LLC*, 137 F. Supp. 3d 430, 490 (S.D.N.Y. 2015). Thus, the FAC allegations that Jurist and Servicer Defendants, through Singh and other Individual Defendants, facilitated the underlying fraud and conversion by inducing Plaintiff to deposit cash collateral to bank accounts beneficially held by Servicer Defendants, and fabrication of excuses to impede the return and misappropriation of Collateral Shares satisfy these pleading requirements for the conspiracy claims.

### E. The FAC Sufficiently Alleges Unjust Enrichment

Ignoring the fact that none of the defendants is—or is alleged to be—a party to the fraudulently procured Loan Agreements, Moving Defendants baselessly argue that Plaintiff's claim for unjust enrichment is precluded by the underlying contracts. This argument has no merit. *Hughes v. BCI Int'l Holdings, Inc.*, 452 F. Supp. 2d 290, 304 (S.D.N.Y. 2006) (finding plaintiffs' claim for unjust enrichment against defendants not precluded by underlying loan agreements where "agreements do not set forth plaintiffs' rights and obligations with respect to the [] Defendants"). Moreover, the FAC alleges particularized facts establishing that Moving Defendants unjustly benefited from the fraudulent scheme. Singh, personally and along with Jurist, received over $21 million in fraudulent proceeds from his role in the fraud scheme. *See* FAC ¶ 98. Servicer Defendants also admittedly received significant loan payments and cash collateral from Plaintiff. *See id*. ¶¶ 49, 58, 69.

In light of the foregoing, Plaintiff respectfully requests that Your Honor deny Moving Defendants' request for leave to file motions to dismiss, or, in the alternative, hold a pre-motion conference to discuss these issues, including, if necessary, a briefing schedule that would allow Plaintiff a time to respond commensurate with the amount of time Plaintiff has already provided to Moving Defendants.



Dated:  September 18, 2024

                            Respectfully submitted,
                            KING & WOOD MALLESONS LLP

                        By: */s/ Vincent Filardo, Jr.*
                            Vincent Filardo, Jr.
                            Aaron T. Wolfson
                            500 Fifth Avenue, 50th Floor
                            New York, NY 10110
                            (212) 319-4755
                            vincent.filardo@us.kwm.com
                            aaron.wolfson@us.kwm.com

```
The Court is in receipt of Defendants Jaitegh "JT" Singh and Jurist IQ
Corp.'s letter seeking a pre-motion conference regarding an anticipated
motion to dismiss the Amended Complaint (Dkt. #64), and Plaintiffs'
above response in opposition (Dkt. #68).

The parties are hereby ORDERED to appear for a telephone conference
regarding the motion on October 29, 2024, at 10:00 a.m.  The dial-in
information is as follows:  At 10:00 a.m., the parties shall call (888)
363-4749 and enter access code 5123533.

The Clerk of Court is directed to terminate the pending motion at
docket entry 64.

Date:      September 20, 2024           SO ORDERED.
           New York, New York
```

                                                             *[signature]*

                                               HON. KATHERINE POLK FAILLA
                                               UNITED STATES DISTRICT JUDGE