UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHENMING HOLDINGS (HONG KONG) LIMITED, *a Hong Kong limited company,*<br><br>Plaintiff,<br><br>-against-<br><br>JOHN DOES 1-10, individuals and/or entities whose names are currently unknown to Plaintiff,<br><br>Defendants. | Civil Case No. 1:24-cv-00935-KPF<br><br>**DELCARATION BY ZHENG CHUNXING** |

I, Zheng Chunxing (郑春兴), the undersigned, hereby declare and state under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1. I have been an executive employee of Chenming Holdings Co., Ltd., which is the sole shareholder of Plaintiff Chenming Holdings (Hong Kong) Limited ("**Chenming**"), since December 1, 2017. My scope of work is rather extensive including administrative affairs, investment and financing related work.

2. The matters to which I refer to in this declaration are true and within my personal knowledge, except where I state them to be upon information and belief and as to those matters I believe them to be true. I am fully familiar with the facts set forth herein, and if called as a witness, I could and would testify competently to these facts under oath.

3. Chenming is a shareholder of Chenming Paper Holdings Limited ("**ListCo**"), a public company listed on the Shenzhen Stock Exchange and Hong Kong Stock Exchange and is in the industry of paper manufacturing. The shares of stock provided by Chenming to secure the

1

various loans in this matter are Class B shares (stock code 200488, "**B Shares**") and Class H shares (stock code 01812, "**H Shares**") of the ListCo.

**The Astor2 Loan**

4. In the second half of 2019, through certain business contacts including a Mr. Ma Chao (马超) and a Mr. Li Yang (李洋), Chenming was introduced to several stock pledge financing opportunities offered by a foreign lender.

5. Mr. Li Qingwei (李庆伟), Ms. Shen Hui (沈慧) and myself participated in the relevant discussions on behalf of Chenming. None of us had experience with such a deal with a foreign lender.

6. After some initial discussions, on October 30, 2019, Li Yang provided a draft term sheet where the lender was said to be Astor Capital Fund Limited.

7. On December 17, 2019, Li Yang provided a set of draft agreements including Stock Loan Agreement and Custodian Management Pledge Agreement (together, "**Astor2 B Shares Agreement**"), pursuant to which the lender was changed to Astor Asset Management 2 Limited ("**Astor2**"). Astor2 designated Weiser Global Capital Markets ("**Weiser**") as custodian.

8. On December 30, 2019, Li Yang and Ma Chao introduced us to a Mr. Liu Qiang (刘强), who was purportedly a partner of Li Yang's with more experience, and with closer connections to the foreign lender.

9. In or around February 2020, Astor2 and Chenming closed the transaction. Astor2 agreed to provide a loan up to US$15,000,000. In turn, Chenming agreed to provide certain B Shares as collateral.

10. On February 10, 2020, I sent to Liu Qiang the executed Astor2 B Shares Agreement. On February 11, 2020, Liu Qiang sent back the fully executed Astor2 B Shares

Agreement. This document was executed under the name of "Michael Romanoff" on behalf of Astor2, who was and is completely unknown to Chenming.

11. Chenming did not have any direct dialogue with any personnel of Astor2 during this process, but Chenming was informed that two non-party intermediaries involved in the transaction, Li Yang and Liu Qian, had maintained communication with the CEO of Astor2, someone purportedly named "Thomas Mellon," and were in contact with Weiser through the lender.

12. In or around September 2020, Chenming and Astor2 closed another transaction where Astor2 agreed to provide a loan up to $20,000,000. The Stock Loan Agreement, Custodian Management Pledge Agreement, and Collateral Segregation Agreement (together, "**Astor2 H Shares Agreement**," together with Astor2 B Shares Agreement, "**Astor2 Agreements**") were executed by Chenming and "Michael Romanoff" on behalf of Astor2, on or about September 22, 2020.

13. Under the Astor2 Agreements, Astor2 issued a total of US$40,292,899.39 in loan principal, consisting of US$15,593,873.64 under the Astor2 B Shares Agreement and US$24,699,025.75 under the Astor2 H Shares Agreement. Chenming provided 110,000,000 Class B Shares under the Astor2 B Shares Agreement and 95,000,000 Class H Shares under the Astor2 H Shares Agreement as collateral. The value of the Class B and H shares provided to Astor2, based on their trading prices at the time the shares were deposited with the custodian broker, was approximately $88,662,546.86.

14. Upon information and belief, since Weiser was not a qualified holder of Class B or H Shares, it in turn appointed China Merchants Securities (HK) Co., Ltd ("**CMS**") and ICBC International Securities Limited ("**ICBCI**"), who are qualified holders, as custodians. Weiser

3

opened an account with CMS, the account number of which was ▮3793 ("**CMS Account**"), to receive 110,000,000 Class B Shares and 78,750,000 Class H Shares as Collateral. Weiser also instructed Chenming to deposit 16,250,000 Class H Shares into another account with ICBCI, the account number of which was ▮0001 ("**ICBCI Account**").

15. Under the Astor2 B Shares Agreement, Chenming paid periodic accrued interest either by way of deduction from the distributed loan, cash payment to Astor2's account with Weiser, dividends distributed upon the collateralized B Shares, or wire to the following bank account with JPM Chase ("**JPM Account**") designated by Astor2:

> Sierra Universal Corp
> 5830 E. 2nd Street, Ste. 7000 #2419 Casper, WY 82609
> Bank: JPM Chase
> Beneficiary Account Number: ▮9672
> Beneficiary Bank: JPM Chase
> Beneficiary Bank Address: 270 Park Ave 31st Floor, New York, NY 10017, United States
> Beneficiary Bank ABA: 021000021
> Beneficiary Bank SWIFT: CHASUS33XXX

16. Under the Astor2 H Shares Agreement, Chenming paid periodic accrued interest either by way of deduction from the distributed loan or wire to the JPM Account or the following bank accounts designated by Astor 2:

> Deltec Bank and Trust Limited
> Deltec House Lyford Cay, P.O. Box N-3229, Nassau, Bahamas
> Bank: Citibank, NA, New York
> Beneficiary Account Number: ▮2100
> Beneficiary Bank ABA: 021000089
> Beneficiary Bank SWIFT: CITIUS33XXX

> Sierra Universal Corp
> 5830 E. 2nd Street, Ste. 7000 #2419 Casper, WY 82609
> Bank: Bank of America
> Beneficiary Account Number: ▮2869
> Beneficiary Bank ABA: 026 009 593
> Beneficiary Bank SWIFT: BOFAUS6S
> Bank address: 100 North Tryon Street, Charlotte, NC 28255

4

>Sierra Universal Corp
>5830 E. 2nd Street, Ste. 7000 #2419 Casper, WY 82609
>Bank: JPM Chase
>Beneficiary Account Number: ▇▇▇▇9672
>Beneficiary Bank: JPM Chase
>Beneficiary Bank Address: 270 Park Ave 31st Floor, New York, NY 10017, United States
>Beneficiary Bank ABA: 021000021
>Beneficiary Bank SWIFT: CHASUS33XXX

17. On May 9, 2022, Astor2 issued a margin call notice. On May 15, 2022, Chenming proposed full repayment of the loan in exchange for return of the collateral. Astor2 declined Chenming's proposal.

18. As a result of those discussions, and as demanded by Astor2, Chenming deposited additional cash in the amount of US$8,105,800 and US$7,866,000 as further security under the Astor2 B Shares Agreement and Astor2 H Shares Agreement respectively, to the JPM Account.

19. Between January and April 2023, Astor2 repeatedly promised and reassured Chenming that if Chenming fully satisfied all loan amounts, Astor2 would ask its "loan committee" to approve and "swift[ly]" process the return of the provided collateral shares under the Astor2 Agreements.

20. On February 9 and 10, 2023, Chenming fully repaid the Astor2 Loan funds to the account designated by Astor 2, namely:

>JURIST IQ CORP IOLTA TRUST ACCOUNT
>530 Fifth Ave 9th Floor, New York, NY 10036
>Beneficiary Account Number: ▇▇▇▇7010
>Beneficiary Bank: First Republic Bank
>Beneficiary Bank Address: 111 Pine Street, San Francisco, CA 94111
>Beneficiary Bank ABA: 321081669
>Beneficiary Bank SWIFT: FRBBUS6S

5

21. Astor2, however, failed to return the collateral shares and instead continually asserted excuses for their delay of return of the collateral, including that their weekly loan committee meeting did not take place.

22. More than two months later, on April 14, 2023, Astor2 issued a letter notifying Chenming that its "loan committee" had decided to reject Chenming's request for the return of its collateral shares.

23. Chenming expressed its disagreement and outrage in several subsequent emails, but Astor2 ignored all of Chenming's demands and has altogether stopped communicating with Chenming as of late May 2023.

24. To date, Chenming has paid $40,292,899.39 in loan principal, $3,490,410.07 in interest, $253,322.08 as maintenance fees, $525,041.59 as custody fees, $1,350,813.90 in origination fees and $2,000 in lender legal expenses.

**The UPC1 Loan**

25. In or about August 2020, through certain business contacts including a Mr. Dou Jiangtao (窦江涛) and a Mr. Zhang Zhen (张震), Chenming was introduced to several stock pledge financing opportunities.

26. On September 23, 2020, Zhang Zhen provided the draft terms of a Securities Loan Agreement pursuant to which the lender was Union Pacific Capital 1 Ltd ("**UPC1**"). On October 22, 2020, Zhang Zhen provided a draft Custodian Management Agreement.

27. Chenming executed the Securities Loan Agreement and Custodian Management Agreement (together, "**UPC1 Agreement**") on October 19 and October 27, 2020, respectively. Zhang Zhen sent me the fully executed agreements on October 21 and November 7, 2020. This

6

document was executed under the name of "Winstone Carrington" on behalf of UPC1, who was and is unknown to Chenming.

28. Pursuant to the UPC1 Agreement, UPC1 agreed to provide a loan up to US$17,000,000. Chenming agreed to provide certain B Shares as collateral. UPC1 designated Weiser as custodian. Weiser used the CMS Account to receive the collateral.

29. Under the UPC1 Agreement, UPC1 issued a total of US$14,674,492.77 in loan funds to Chenming, and Chenming provided a total of 80,000,000 Class B Shares as collateral. The value of the Class B shares, based on their trading prices at the time the shares were deposited with the custodian broker, was approximately $31,729,653.04.

30. Prior to April 2023, before Chenming discovered the fraudulent scheme employed by the Lenders, Chenming made regular payments on the UPC1 Loan to the following accounts designated by UPC1:

> Deltec Bank and Trust Limited
> Deltec House Lyford Cay, P.O. Box N-3229, Nassau, Bahamas
> Beneficiary Bank: Citibank, NA, New York,
> Beneficiary Account Number: ▇▇▇2100
> Beneficiary Bank ABA: 021000089
> Beneficiary Bank SWIFT: CITIUS33XXX
>
> UPC Holdings Ltd.
> 155 E. 44th Street
> New York, NY 10017, USA
> Bank: Community Federal Savings Bank
> Beneficiary Bank Address: 89-16 Jamaica Ave
> Woodhaven, NY 11421, USA
> Beneficiary Account Number: ▇▇▇▇7861
> Beneficiary bank SWIFT: CMFGUS33
>
> Lviv Estate Holdings Ltd
> 142 Gold Springs Ct
> Canton, GA 30114, USA
> Bank: JP Morgan Chase Bank NA
> Beneficiary Bank Address: 270 Park Ave
> New York, NY 10017, USA

7

       Beneficiary Account Number: ████5510
       Beneficiary bank SWIFT: CHASUS33

31. As of the end of April 2023, Chenming has paid $2,037,307.53 in loan principal, $992,651.36 in interest, $122,760.00 as maintenance fees, $371,372.64 as custody fees, $440,234.79 in loan generation fees and $5,000 in lender closing costs.

32. In or about early May 2023, Chenming began to investigate the whereabouts of the Class B Shares provided as collateral under the UPC1 Agreement. Chenming requested the complete record of shareholders for the shares from China Securities Depository and Clearing Co. Ltd (the entity charged with maintaining the relevant register of share ownership). From the records provided, Chenming was unable to identify accounts that could possibly hold the 80 million shares. Chenming was concerned about the safety of the shares and requested UPC1 to confirm the same.

33. Chenming wrote to UPC1 on May 5, 2023, seeking confirmation of the safety of the collateral and proposed a conference call. Several hours later, UPC1 sent Chenming a margin call notice allegedly due to the drop of the share price, asking for additional shares or cash as further security, but failing to advise Chenming as to the whereabouts of the shares or to accommodate Chenming's request for a conference call.

34. Both parties exchanged emails in the subsequent weeks. Chenming made multiple attempts to obtain proof from UPC1 as to the safety of the shares, but no such proof was provided. UPC1 resisted Chenming's reasonable requests while demanding additional collateral.

35. On June 24, 2023, UPC1 filed a Request for Arbitration with the London Court of International Arbitration ("**LCIA**") against Chenming.

**The Vanderbilt Loan**

36. In or about late January and early February 2021, Chenming was approached by a Ms. Ling Li (凌莉) who introduced a stock loan financing opportunity to Chenming. Zhang Zhen, who was introducing other loan opportunities to Chenming, stepped in the relevant discussions with Ling Li.

37. On March 18, 2021, Zhang Zhen sent me a draft Master Loan Agreement. On April 17, 2021, Ling Li sent me a draft Custodian Management Agreement. The documents specified the lender as Cornelius Vanderbilt Capital Management Ltd ("**Vanderbilt**").

38. Chenming executed these agreements (together, "**Vanderbilt Agreement**") on April 17 and 19, 2021, respectively. On April 20, 2021, Ling Li sent me the fully executed Vanderbilt Agreement. This document was executed under the name of "Christopher Warner" on behalf of Vanderbilt, who was and is unknown to Chenming.

39. Under the Vanderbilt Agreement, Vanderbilt agreed to provide a loan up to $45,000,000. Chenming agreed to provide certain Class H Shares as collateral. Vanderbilt designated Weiser as the custodian. Weiser used the CMS Account to receive the Collateral.

40. Vanderbilt issued a total of $12,572,187.35 in loan funds to Chenming. Chenming provided a total of 58,414,000 Class H Shares as collateral.

41. In response to margin call notices issued by Vanderbilt, on August 2, 2021, and June 16, 2022, Chenming deposited additional cash in the amount of $5,640,000 and $5,851,421.50, respectively, as further security for the Vanderbilt Loan. In February 2023, Chenming further deposited an additional 20,717,563 Class B Shares with another broker appointed by Vanderbilt, Armira Capital Limited, pursuant to a separate Custodian Management Agreement. The value of the Class B and H shares provided to Vanderbilt, based on their trading

prices at the time the shares were deposited with the custodian broker, was approximately $48,594,383.04.

42. As of April 2023, Chenming has paid $6,150,327.92 in loan principal, $439,614.77 in interest, $62,860.94 as maintenance fees, $182,602.45 as custody fees, $408,596.09 in loan generation fees, and $5,000 in lender closing costs. In addition, Vanderbilt is still holding Chenming's security in the amount of $5,851,421.50.

43. The above payments were made either by way of deduction from the loan principal, dividends distributed upon the Class B Shares or wire to the following bank accounts designated by Vanderbilt:

> Deltec Bank and Trust Limited
> Deltec House Lyford Cay, P.O. Box N-3229, Nassau, Bahamas
> Beneficiary Bank: Citibank, NA, New York,
> Beneficiary Account Number: ▇▇2100
> Beneficiary Bank ABA: 021000089
> Beneficiary Bank SWIFT: CITIUS33XXX
>
> C Vanderbilt Management Ltd.
> 600 Broadway Albany, NY 12207
> Beneficiary Bank: JP Morgan Chase Bank NA
> Beneficiary Bank Address: 270 Park Ave
> New York, NY 10017, USA
> Beneficiary Account Number: ▇▇9621
> Beneficiary Bank SWIFT: CHASEUS33
>
> C Vanderbilt Management Ltd.
> 600 Broadway Albany, NY 12207
> Beneficiary Bank: Community Federal Savings
> Beneficiary Bank Address: 89-16 Jamaica Ave
> Woodhaven, NY 11421, USA
> Beneficiary Account Number: ▇▇1912
> Beneficiary Bank SWIFT: CMFGUS33

**Documents Disclosed through Hong Kong Court Order**

44. On or around October 4, 2023, Chenming obtained documents from CMS and ICBCI pursuant to disclosure orders granted by the Hong Kong High Court. The disclosed

documents indicate that the lenders started selling Chenming's collateral shares immediately upon their receipt; substantial shares had been sold or transferred to other accounts without or prior to any alleged default; and the ICBCI Account was held under the name of a company called Zundiao Securities Limited (尊迪奥证券有限公司), instead of Weiser.

45. At the time the parties negotiated and signed the foregoing loan agreements, Chenming was told that the non-party intermediaries had direct communications with each of the lenders. Therefore, after Chenming discovered the fraudulent scheme, we tried to find out the identity and contact information of the parties behind the Lenders from the intermediaries. However, we were told that the PRC intermediaries had only communicated with the lenders through other overseas intermediaries and did not actually have direct contact with the lenders. As a result, it was clear to us that it would be futile to try to identify the Lenders and the parties behind them through our intermediaries, who were the only people involved in the loan transactions known to us.

46. In or about April 2023, Mr. Sung Chin Chien, an employee of a Chenming affiliate, travelled to Canada to visit Astor2's address which is provided in the Astor2 Agreement. When he arrived, he found the address non-existent, and could find no alternative address for Astor2. Similarly, another Chenming affiliate employee, Mr. Feng Tao, travelled to the United States to visit Astor Management LLC purportedly located at 388 Market St, San Francisco, California. When he arrived, he found that Astor Asset Management LLC was not located at that address and could not find an alternate address for it.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Date: February 7, 2024
Shandong, China

郑春兴
Zheng Chunxing

12

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. Since the identities of Defendants are unknown to Plaintiff, I was unable to send a copy of the foregoing document and the accompanying motion papers to Defendants or their counsel at this time.

By: <u>*/s/ Vincent Filardo, Jr.*</u>
Vincent Filardo, Jr.