UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHENMING HOLDINGS (HONG KONG) LIMITED, *a Hong Kong limited company*,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>VAL SKLAROV, TETYANA SKLAROV, JAITEGH "JT" SINGH, JURIST IQ CORP, SIERRA UNIVERSAL CORP, UPC HOLDINGS LTD, LVIV ESTATE HOLDINGS LTD, and C VANDERBILT MANAGEMENT LTD.,<br><br>　　　　Defendants. | Case No. 24-cv-935 |

**REPLY MEMORANDUM OF LAW OF DEFENDANTS SIERRA UNIVERSAL CORP, UPC HOLDINGS LTD, LVIV ESTATE HOLDINGS LTD., AND C VANDERBILT MANAGEMENT LTD. IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S VERIFIED SECOND AMENDED COMPLAINT**

　
　
　
　
　
　
　
　
　
　
　
　　　　　　　　　　　　　　　　　　　　　　　BRYAN CAVE LEIGHTON PAISNER LLP
　　　　　　　　　　　　　　　　　　　　　　　1290 Avenue of the Americas
　　　　　　　　　　　　　　　　　　　　　　　New York, New York 10104
　　　　　　　　　　　　　　　　　　　　　　　(212) 541-2000

# **TABLE OF CONTENTS**

Page

I. Releases in the Loan Agreements Bar Claims against Servicer Defendants ...................... 1

    A. Servicer Defendants are Intended Third- Party Beneficiaries under the Loan Agreements ........................................................................................................... 1

    B. Plaintiff's Fraud Allegations Do Not Invalidate the Releases ............................... 2

II. Plaintiff Fails to Salvage Its Aiding and Abetting Claim against Servicer Defendants ..... 3

    A. Plaintiff's Fraud Claim is Not Well Pleaded ......................................................... 3

        1. The SAC Is Insufficiently Particular to Satisfy Rule 9(B) ......................... 3

        2. Plaintiff Fails To Establish Reasonable Reliance on any Alleged Misrepresentation ....................................................................................... 5

        3. The SAC Fails to Establish Fraud Separate from an Alleged Breach of the Loan Agreements ....................................................................................... 6

    B. Plaintiff Fails to Establish Servicer Defendants' Aiding and Abetting Fraud ........ 7

III. Plaintiff Abandoned Its Conspiracy Claims Against Servicer Defendants yet Still Fails to State a Valid Claim ............................................................................................................ 9

    A. The SAC States No Primary Claim for Fraud or Conversion ............................... 9

    B. Plaintiff's Allegations Are Insufficient to Establish Conspiracy Liability ........... 11

IV. Conclusion ........................................................................................................................ 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abacus Fed. Sav. Bank v. ADT Sec. Servs., Inc.*,
   18 N.Y.3d 675 (2012) ...................................................................................................2

*AD Rendon Communications, Inc. v Lumina Americas, Inc.*,
   No. 04-CV-8832 (KMK), 2006 WL 1593884 (S.D.N.Y. June 7, 2006) ................................11

*Bancorp Servs., LLC v. Am. Gen. Life Ins. Co.*,
   14-CV-9687 (VEC), 2016 WL 4916969 (S.D.N.Y. Feb. 11, 2016) ...........................................1

*Centro Empresarial Cempresa S.A. v. Am. Movil, S.A.B. de C.V.*,
   17 N.Y.3d. 269 (2011) .................................................................................................2

*Charron v. Sallyport Glob. Holdings, Inc.*,
   No. 12 CIV 6837 (WHP), 2014 WL 464649 (S.D.N.Y. Feb. 3, 2014) ....................................2

*Consorcio Prodipe, S.A. de C.V. v Vinci, S.A.*,
   544 F. Supp. 2d 178 (S.D.N.Y. 2008)................................................................................2

*In re Currency Conversion Fee Antitrust Litig.*,
   265 F. Supp. 2d 385 (S.D.N.Y. 2003)................................................................................4

*EED Holdings v. Palmer Johnson Acquisition Corp.*,
   228 F.R.D. 508 (S.D.N.Y. 2005) .....................................................................................4

*Exch. Listing, LLC v. Inspira Techs., Ltd.*,
   661 F. Supp. 3d 134 (S.D.N.Y. 2023)................................................................................7

*Glidepath Holding B.V. v. Spherion Corp.*,
   590 F. Supp. 2d 435 (S.D.N.Y. 2007)................................................................................6

*Nathel v. Siegal*,
   592 F. Supp. 2d 452 (S.D.N.Y. 2008)................................................................................8

*Pentacon BV v. Vanderhaegen*,
   725 F. Supp. 3d 350 (S.D.N.Y. 2024), reconsideration denied, 23 CIV. 2172 (KPF),
   2024 WL 3835334 (S.D.N.Y. Aug. 15, 2024) ...............................................................5, 9

*Pope v Rice*,
   No. 04 Civ. 4171 (DLC), 2005 WL 613085 (S.D.N.Y. Mar. 14, 2005).................................11

*Simon-Whelan v. Andy Warhol Found. for the Visual Arts, Inc.*,
   No. 07 CIV 6423 (LTS), 2009 WL 1457177 (S.D.N.Y. May 26, 2009) .................................2

*Spinelli v. Nat'l Football League*,
    903 F.3d 185 (2d Cir. 2018)......................................................................................................7

*Solomatina v Mikelic*,
    370 F. Supp. 3d 420 (S.D.N.Y. 2019)....................................................................................10

*SPV Osus Ltd. v. UBS AG*,
    882 F.3d 333 (2d Cir 2018)......................................................................................................8

*VeroBlue Farms USA, Inc. v. Canaccord Genuity LLC*,
    20 CIV 4394 (JPC), 2021 WL 3913555 (S.D.N.Y. Sept. 1, 2021), *aff'd*, No. 21-2465-cv,
    2022 WL 2133780 (2d Cir. June 14, 2022) .............................................................................2

*Warner Theatre Associates Ltd. P'ship v. Metro. Life Ins. Co.*,
    149 F.3d 134 (2d Cir. 1998).....................................................................................................6

*Wells Fargo Bank, N.A. v. HoldCo Asset Mgmt., L.P.*,
    No. 16-CV-6356 (KBF), 2017 WL 2963501 (S.D.N.Y. July 11, 2017), *aff'd*,
    729 F. App'x 124 (2d Cir. 2018) ............................................................................................10

*Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*,
    933 F.2d 131 (2d Cir. 1991)..................................................................................................4, 5

*Youmans v. Schriro*,
    No. 12 Civ. 3690(PAE)(JCF), 2013 WL 6284422 (S.D.N.Y. Dec. 3, 2013) ...........................9

I.      **Releases in the Loan Agreements Bar Claims against Servicer Defendants**

Plaintiff ignores plain language in Loan Agreement releases stating that Servicer Defendants are within the class of intended beneficiaries. Plaintiff's further argument that its fraud claims invalidate these releases ignores well-settled precedent.

A.      **Servicer Defendants are Intended Third-Party Beneficiaries under the Loan Agreements**

Asserting that Servicer Defendants "cannot cite to any specific provision" of the Loan Agreements demonstrating that they are intended third-party beneficiaries (*see* Plaintiff's Opposition Brief (ECF #120, "Opposition"), 43-44), Plaintiff brazenly ignores its unambiguous promise to release and not sue a specific class of "████████" that "███████," "████████" or "█████" the respective Lenders. *See* Servicer Defendants' Motion to Dismiss Brief (ECF #120, "Motion"), 4-5. Plaintiff alleges Servicer Defendants assisted Lenders by receiving loan repayments.[1] SAC ¶¶25, 27, 29, 31. That Servicer Defendants did not exist when the Loan Agreements were executed does not preclude them from being third-party beneficiaries.[2] *See Bancorp Servs., LLC v. Am. Gen. Life Ins. Co.*, 14-CV-9687 (VEC), 2016 WL 4916969, at *7 (S.D.N.Y. Feb. 11, 2016) ("A third party may enforce a contract if it is within the *class of intended beneficiaries* of the contract even if *not named or known* of at the time.") (emphasis supplied) (citation omitted).

---

[1]   There is no ambiguity in the release provisions, invalidating Plaintiff's attempt to distinguish *Newman & Schwartz v. Asplundh Tree Expert Co., Inc.* Opposition, 44, fn 13.

[2]   Plaintiff's further contention that Servicer Defendants' status as third-party beneficiaries equates to their participation in an alleged conspiracy is baseless. Opposition, 45. Servicer Defendants did not exist upon execution of the Loan Agreements, nor prior to the alleged transfer of nearly all the Collateral Shares (*see* Motion, 19-20), precluding their having participated in a conspiracy to cause those actions. *Infra*, III.B. After execution of the Loan Agreements and alleged transfer of the Collateral Shares, Servicer Defendants became third-party loan servicers, a class of parties contemplated and released by Plaintiffs.

### B. Plaintiff's Fraud Allegations Do Not Invalidate the Releases

Plaintiff also incorrectly asserts that "Defendants" have not cited to "a single provision" releasing its fraud claims, but Plaintiff does not even attempt to address the well-settled precedent enforcing indistinguishably broad releases, even where fraud unknown to the releasor at the time of the release is alleged. Motion, 4-5. Such releases are enforceable, particularly "in a commercial context by parties in roughly equivalent bargaining positions and with ready access to counsel," as here. *Id*., 6-7; *Consorcio Prodipe, S.A. de C.V. v Vinci, S.A.*, 544 F. Supp. 2d 178, 189 (S.D.N.Y. 2008). Plaintiff's reliance on *Centro Empresarial Cempresa S.A. v. Am. Movil, S.A.B. de C.V.*, 17 N.Y.3d. 269 (2011) and other cases concerning releases procured by fraud is misplaced. Opposition, 47-48. In *Centro*, evaluating a fraudulent inducement claim like Plaintiff's, the Court of Appeals upheld the release at issue, barring the inducement claim absent allegations that the *release itself* was procured by "separate fraud." *Id*., 277-278.

Plaintiff fails to adequately allege fraud, *infra,* but even assuming otherwise, Plaintiff does not allege the Loan Agreement releases themselves were procured by fraud, as required.[3] *Id*. The releases apply to Plaintiff's claims against Servicer Defendants and bar them. *See VeroBlue Farms USA, Inc. v. Canaccord Genuity LLC*, 20 CIV 4394 (JPC), 2021 WL 3913555, at *7 (S.D.N.Y. Sept. 1, 2021), *aff'd*, No. 21-2465-cv, 2022 WL 2133780 (2d Cir. June 14, 2022) (release applicable even if executed "before any semblance of fraud had come to light.") (citations and quotations omitted).

---

[3] That fact distinguishes this matter from *Simon-Whelan v. Andy Warhol Found. for the Visual Arts, Inc.*, No. 07 CIV 6423 (LTS), 2009 WL 1457177 (S.D.N.Y. May 26, 2009), where plaintiff pleaded a separate claim for declaratory judgment to specifically invalidate a release. The other cases cited by Plaintiff are also distinguishable. *Charron v. Sallyport Glob. Holdings, Inc*., No. 12 CIV 6837 (WHP), 2014 WL 464649 (S.D.N.Y. Feb. 3, 2014) (applicability of release not determined); *Abacus Fed. Sav. Bank v. ADT Sec. Servs., Inc.*, 18 N.Y.3d 675, 683 (2012) (no allegations of fraud).

## II.  Plaintiff Fails to Salvage Its Aiding and Abetting Claim against Servicer Defendants

**A. Plaintiff's Fraud Claim is Not Well Pleaded**

*1. The SAC Is Insufficiently Particular to Satisfy Rule 9(B)*

In seeking to be excused from pleading fraud with particularity so it could obtain discovery to support its claims (Opposition, 28-31), Plaintiff essentially ignores that Rule 9(b) is a pleading rule, which Plaintiff must satisfy to proceed with the case.  Plaintiff's failure to plead with required particularity is evident, even with respect to facts clearly within its knowledge.  Plaintiff relies on allegations that certain non-party individuals misrepresented facts about the Lenders, but it offers no allegation, particular or otherwise, regarding the basis for contending that those alleged third-party statements were "directed" by "Defendants."  *See* SAC ¶¶52, 86, 100-101.  Plaintiff participated in these alleged communications, not Defendants.  Only Plaintiff knows how it somehow concluded that "Defendants" were responsible for alleged misstatements by third-parties, but the SAC is devoid of any basis for that conclusion, precluding compliance with Rule 9(b).

Likewise, Plaintiff allegedly obtained information about the status of Collateral Shares from the High Court of Hong Kong but provides no specifics regarding that information.  *Id*. ¶129. Instead, Plaintiff obfuscates what it learned by pleading at times that Lenders transacted in Collateral Shares and at other times that Lenders sold the shares.  *Id*.  Plaintiff's hyperbolic footnote professing not to understand this distinction cannot salvage its claim. Opposition, 28, fn 9. The difference between transacting in and selling is important, since Plaintiff expressly agreed in each Loan Agreement that Lenders had the right to encumber and transact in a variety of ways in the Collateral Shares.  *See* Motion, 11.  Intentionally conflating transactions and sales, Plaintiff

3

makes it impossible to determine whether the alleged transaction was permitted or not under the contract, violating the purpose of Rule 9(b).[4]

Plaintiff also seeks leave to improperly lump all Defendants together because Individual Defendants purportedly "acted as the same entity" and are "alter egos" of Jurist IQ, Lenders, and Servicer Defendants. Opposition, 33. But the SAC lacks non-conclusory allegations that support veil-piercing. Plaintiff must allege facts, not mere conclusions, that an owner completely dominated a corporation as to the transaction at issue. *See In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d 385, 426 (S.D.N.Y. 2003) ("purely conclusory allegations cannot suffice to state a claim based on veil-piercing or alter-ego liability, even under the liberal notice pleading standard.") Relevant dominion and control factors include (1) the sharing of a common office, staff, and ownership; (2) the intermingling of funds; (3) the treatment of the corporations as one, not separate, profit centers; (4) the lack of the conventions of corporate existence; (5) any inadequate earnings; (6) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (7) whether the related corporations deal with the dominated corporation at arms-length, and (8) whether the corporation in question had property that was used by other of the corporations as if it were its own. *Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 933 F.2d 131, 139 (2d Cir. 1991). Claims sounding in fraud like Plaintiff's must also meet Rule 9(b) as to veil piercing. *EED Holdings v. Palmer Johnson Acquisition Corp.*, 228 F.R.D. 508, 512 (S.D.N.Y. 2005). Plaintiff fails that test.

---

[4] Other allegations of fraud within Plaintiff's knowledge are also speculative and conclusory, failing to satisfy Rule 9(b), including that Plaintiff does not state with particularity why Margin Call Notices it received were fraudulent, or allege how Lenders' assertion that share value had dropped was incorrect or fraudulent. Motion, 9-11.

4

At most, Plaintiff alleges that certain Individual Defendants held roles with Lenders and/or Servicer Defendants, and that, upon information and belief only, one of Servicer Defendants, Lviv, shared a Georgia address with the Sklarov Defendants. *See* SAC ¶¶4, 10. The SAC lacks any allegation, much less a particularized one, that: (i) any Defendants (beyond Lviv) or Lenders share an address, or that any Defendants or Lenders shared a common office, (ii) there was any intermingling of funds among Defendants or Lenders; (iii) Defendants or Lenders were treated as one profit center, (iv) any Defendants or Lenders were undercapitalized, (v) funds were taken out of the Servicer Defendants or Lenders for personal rather than corporate purposes, (vi) Defendants did not deal with each other or Lenders at arms-length, (vii) any Defendant or Lender treated the property of another as its own. *Wm. Passalacqua Builders, Inc.*, 933 F.2d at 139 (2d Cir. 1991).[5]

2. *Plaintiff Fails To Establish Reasonable Reliance on any Alleged Misrepresentation*

Plaintiff's invocation of "information asymmetry" provides no reason for reliance on non-party misrepresentations (Opposition, 41), especially given that Plaintiff specifically acknowledged in each Loan Agreement that it was not relying on any marketing materials or other extra-contractual representations. Motion, 14. Plaintiff also does not allege any attempt to ask the non-party individuals who introduced it to Lenders for clarifying details, or to conduct any due diligence into Lenders, even though Plaintiff acknowledges that it could have uncovered alleged issues with Lenders through publicly available information. SAC ¶¶55, 100; Motion, 13.

---

[5] *Pentacon BV v. Vanderhaegen,* 725 F. Supp. 3d 350 (S.D.N.Y. 2024), and other cases where veil piercing was appropriate are distinguishable. In *Pentacon*, the pleading provided "extensive justification" for treating the defendants as one in the same, including that (i) the individual defendant was the sole director, officer and employee of all three corporate defendants, (ii) they all shared the individual's residential address, and (iii) the entities had no business but to serve the individual defendant, none of which is alleged here. *Id*. 374-375.

5

Courts dismiss fraud claims where a plaintiff "failed to examine readily available information, relied on oral representations of information when it could have easily asked for additional information, or failed to properly investigate a transaction." *Glidepath Holding B.V. v. Spherion Corp.*, 590 F. Supp. 2d 435, 459 (S.D.N.Y. 2007) (cited by Plaintiff). Plaintiff knew the names of the Lenders it contracted with yet made no attempt to uncover any facts about them.[6] Thus, particularly as a sophisticated entity entering into Loan Agreements under which it could forfeit approximately $100 million in stock upon default, Plaintiff's alleged reliance was not reasonable as a matter of law, precluding its fraud claim.

3. *The SAC Fails to Establish Fraud Separate from an Alleged Breach of the Loan Agreements*

Plaintiff heavily relies on the claim that Lenders never intended to "engage in honest stock lending activities" as reason for alleging fraud based on purported extra-contractual promises to return Collateral Shares at loan maturity. *See* Opposition, 27, 38. That argument is not supported by SAC allegations. Plaintiff makes the conclusory allegation that Lenders were not "legitimate" and vaguely asserts that Lenders either (permissibly) transacted in Collateral Shares or prematurely sold those Shares. *See* SAC ¶¶33, 35, 54, 86, 103, 181, 183 (cited at Opposition, 39). But, Plaintiff alleges no *facts* showing that Lenders did not intend to complete a lending transaction. To the contrary, Plaintiff alleges that the Loans were funded, and that Plaintiff repaid some of those proceeds under the Loan Agreements before defaulting, showing performance of key aspects of the contemplated loan transactions. *Id.* ¶¶35, 40, 44.

---

[6] Nor does Plaintiff allege that it would have been unreasonable to conduct proper diligence. *See Warner Theatre Associates Ltd. P'ship v. Metro. Life Ins. Co.*, 149 F.3d 134, 136 (2d Cir. 1998) (unlike here, peculiar-knowledge exception available "where a party would face high costs in determining the truth or falsity of an oral representation … and those costs are sufficiently great to render reliance upon the representation reasonable.").

Further, and unaddressed in Opposition, Plaintiff fails to plead that Lenders' retention of Collateral Shares was wrongful since it also admits its own breach of three of the four Loan Agreements and omits key facts concerning its compliance with the other. Motion, 16-17.[7] To determine whether any wrongdoing took place, the Court must first look to the terms of the Loan Agreements. If any right or obligation was breached, Plaintiff may seek remedies under those agreements, but not convert breach of contract into fraud. *See Spinelli v. Nat'l Football League*, 903 F.3d 185, 209 (2d Cir. 2018) (cited by Plaintiff) (where "the defendant simply misrepresented its intent to perform under a contract, no separate claim for fraud will lie.").

Plaintiff fails to address *Exch. Listing, LLC v. Inspira Techs., Ltd.*, where a defendant allegedly promised to remit certain stock "with no intention of acting upon or honoring the promised consideration." 661 F. Supp. 3d 134, 157 (S.D.N.Y. 2023) (Failla, J.) (Motion, 14). This Court held that such a promise was "the core" of the contract at issue and that, "[w]hether [defendant] intended to perform or not under the [contract] is simply irrelevant, and Plaintiff's only plausible claim lies in contract, not tort." *Id*. The same reasoning applies here.

**B. Plaintiff Fails to Establish Servicer Defendants' Aiding and Abetting Fraud**

All Loan Agreements were executed before the relevant Servicer Defendant was created. Motion, 19-20. Further, all alleged transactions in Collateral Shares took place prior to creation of the relevant Servicer Defendant, except for SUC, which was created five months after the alleged eight months of transactions in Collateral Shares under the Astor2 loans began. *Id*. Plaintiff's contention that Servicer Defendants had the same knowledge as the Individual

---

[7] Plaintiff pleads that it defaulted under the UPC1 and Vanderbilt loans (SAC ¶45), did not timely repay the January 2020 Astor2 loan, the maturity date of which was in January 2023 (*id*. ¶80), and it fails to provide particularized allegations concerning its compliance with the September 2020 Astor2 Loan Agreement (or any other obligation). *See* Motion, 17.

7

Defendants based on an alter ego theory is meritless. *Supra*, II.A.1. Even assuming Individual Defendants' knowledge may be imputed to Servicer Defendants, Plaintiff still cannot show contemporaneous Servicer Defendant knowledge of acts taking place prior to their existence, nor does it cite any authority holding otherwise. Even if Servicer Defendants became aware of alleged fraudulent conduct occurring in the past upon their creation, Plaintiff fails to plead substantial assistance such that Servicer Defendants proximately caused any failure by Lenders to return the Collateral Shares. *See SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 345 (2d Cir 2018) (substantial assistance test is one of proximate cause).

Plaintiff's accusation of "active concealment" by Servicer Defendants lacks SAC support. Opposition, 61. Plaintiff alleges no communication with, or reliance on any statement or action by Servicer Defendants. Plaintiff does not allege that it was duped into making loan repayments to bank accounts held by Servicer Defendants based on anything that Servicer Defendants did or said, or based on anything Lenders or Individual Defendants said about Servicer Defendants. *See SPV Osus Ltd.*, 882 F3d at 346 (dismissing aiding and abetting claim that defendants gave "air of legitimacy" to alleged fraud where plaintiff failed to demonstrate awareness of or reliance on defendants' statements). At most, Plaintiff suggests (without pleading) Servicer Defendants' passive receipt of loan repayment funds under the Loan Agreements.[8] Plaintiff fails to connect Servicer Defendants to Plaintiff's execution of Loan Agreements or Lenders' alleged transactions in Collateral Shares at all, much less show they were the proximate cause of those actions.[9]

---

[8] Plaintiff does not allege, much less with particularity, that it remitted any funds into Servicer Defendants' bank accounts. Moving Brief, 21.

[9] Plaintiff mistakenly relies on *Nathel v. Siegal* (Opposition, 59), where alleged abettor defendants signed partnership agreements misrepresenting their expertise and allowed the primary defendant to represent them as experts, which deceived plaintiffs into believing that the partnerships would be properly managed with proper oversight. 592 F. Supp. 2d 452, 459 (S.D.N.Y. 2008). Servicer Defendants took no such action.

Plaintiff also relies on multiple contentions not pleaded in the SAC. Plaintiff contends in its Opposition that Servicer Defendants were created "for the sole purpose of perpetrating the [alleged] fraud," but the SAC lacks any factual allegation that this was their only purpose. Opposition, 57-59, 61. The SAC also lacks any allegation that Servicer Defendants "funneled money" to Individual Defendants, as Plaintiff now argues. Opposition, 59. Plaintiff cites SAC ¶¶21-23, 70-75, and 140-141, but none of those paragraphs, nor any other, contains allegations that loan repayment funds received by Servicer Defendants were sent to Individual Defendants.

Finally, despite not asserting primary fraud against Servicer Defendants (SAC, 50), Plaintiff argues repeatedly that Servicer Defendants are alter egos of other Defendants. Opposition, 33. Yet, if Defendants acted together as one entity to commit alleged fraud, as Plaintiff contends, then Servicer Defendants could not have substantially assisted that fraud. *See Pentacon BV v. Vanderhaegen*, 725 F. Supp. 3d 350, 388 (S.D.N.Y. 2024), reconsideration denied, 23 CIV. 2172 (KPF), 2024 WL 3835334 (S.D.N.Y. Aug. 15, 2024) (alter egos could not aid and abet own fraud).

### III. Plaintiff Abandoned Its Conspiracy Claims Against Servicer Defendants yet Still Fails to State a Valid Claim

Plaintiff does not address Servicer Defendants' arguments supporting dismissal of Plaintiff's conspiracy claims (Counts 4 and 6) in any respect (Opposition, §VI), requiring dismissal of those claims. *See, e.g., Youmans v. Schriro*, No. 12 Civ. 3690(PAE)(JCF), 2013 WL 6284422, at *5 (S.D.N.Y. Dec. 3, 2013) ("A plaintiff's failure to respond to contentions raised in a motion to dismiss constitutes an abandonment of those claims."). In any event, Servicer Defendants demonstrated these claims' critical deficiencies. Motion, §§II, III.

#### A. The SAC States No Primary Claim for Fraud or Conversion

9

To plead a conspiracy to commit a tort (fraud or conversion), the primary tort must be pled. Along with the failure of its primary fraud claim (*supra*, II.A), Plaintiff's arguments in support of its conversion claim, which ignore Servicer Defendants' moving arguments, also fail. Plaintiff contends that the details of the alleged conversion were concealed from it, but disregards the SAC's lack of allegations showing Lenders' retention of Collateral Shares was unauthorized. Opposition, 55-56; Motion, 25.

Plaintiff concedes it defaulted under the UPC1, Vanderbilt, and first Astor2 Loan Agreements and fails to plead timely compliance with the second Astor2 Loan Agreement. SAC ¶¶45, 80; Motion, 17; *supra*, fn. 7. Thus, Plaintiff fails to establish that Lenders were not entitled to retain Collateral Shares as a remedy for those defaults such that Lenders' retention of the shares was unauthorized. *See* Motion, 25.

Plaintiff also fails to plead conversion separate from a breach of contract. Plaintiff's entitlement to the Collateral Shares is governed by the Loan Agreements, and if Lenders wrongfully withheld those shares, then Plaintiff's remedy is to sue them for breach of those Agreements. It is not sufficient to claim that Individual Defendants, as alter egos, "caused" Lenders to breach the Loan Agreements. Opposition, 53. Plaintiff's claims rest on the assertion that Lenders breached the Loan Agreements, not that any other party converted its property. *See Solomatina v Mikelic*, 370 F. Supp. 3d 420, 432 (S.D.N.Y. 2019) (dismissing conversion and distinguishing *Moses* (cited by Plaintiff) where alleged wrongful conduct was not separate and apart from failure to adhere to contractual terms); *Wells Fargo Bank, N.A. v. HoldCo Asset Mgmt., L.P.*, No. 16-CV-6356 (KBF), 2017 WL 2963501, at *17 (S.D.N.Y. July 11, 2017), *aff'd*, 729 F. App'x 124 (2d Cir. 2018) (denying conversion and distinguishing *Fabry* (cited by Plaintiff)

10

because that claim involved continued wrongdoing after the parties' agreement had been terminated.)

Plaintiff also cannot create a separate conversion claim by seeking punitive damages in the SAC. Opposition, 54. Plaintiff cites *AD Rendon Communications, Inc. v Lumina Americas, Inc.*, but that court <u>dismissed a conversion claim</u> on similar facts since Plaintiff can only seek punitive damages *after* it has established an independent tort. No. 04-CV-8832 (KMK), 2006 WL 1593884, at *6 (S.D.N.Y. June 7, 2006). As in *AD Rendon*, Plaintiff's claim here "clearly has its genesis in the contractual relationship" at issue, *id.*, and Plaintiff's suggestion that its request for punitive damages makes its conversion claim a separate tort fails as a matter of law.

### B. Plaintiff's Allegations Are Insufficient to Establish Conspiracy Liability

Conspiracy requires affirmative entry into a corrupt agreement and participation in an alleged scheme. *Pope v Rice*, No. 04 Civ. 4171 (DLC), 2005 WL 613085, at *13 (S.D.N.Y. Mar. 14, 2005). Here, Plaintiff's conspiracy allegations are conclusory, that "Defendants" "through" Lenders "agreed and conspired to" defraud Plaintiff and convert the Collateral Shares. SAC ¶¶221, 242. Plaintiff alleges no specific agreement by Servicer Defendants. After their incorporation, Servicer Defendants at most passively received loan repayments Plaintiff was obligated to make. Plaintiff fails to connect any Servicer Defendant conduct to an alleged scheme to induce Plaintiff into the Loan Agreements or to convert the Collateral Shares.

### IV. <u>Conclusion</u>

For the foregoing reasons and those stated in the Motion, Plaintiff's SAC should be dismissed in its entirety, with prejudice, as against Servicer Defendants.

Dated: New York, New York
March 7, 2025

                        BRYAN CAVE LEIGHTON PAISNER LLP

                        By: */s/ Eric Rieder*
                             Eric Rieder
                             Chris LaRocco
                        1290 Avenue of the Americas
                        New York, New York 10104
                        (212) 541-2000
                        eric.rieder@bclplaw.com
                        chris.larocco@bclplaw.com

                        *Attorneys for Defendants Sierra Universal Corp, UPC Holdings Ltd, Lviv Estate Holdings Ltd, and C Vanderbilt Management Ltd*

## CERTIFICATE OF COMPLIANCE

1. This memorandum of law complies with the type-volume limitation, as provided in Local Civil Rules of the United State District Courts for the Southern and Eastern Districts of New York, Rule 7.1(c), and Honorable Judge Katherine P. Failla's Individual Rules of Practice in Civil Cases, Rule 4(B), because, exclusive of the exempted portions, it contains 3,456 words.

2. As permitted by Local Civil Rule 7.1(c) and Hon. Judge Failla's Individual Rule 4(B), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

Dated: March 7, 2025                              */s/ Eric Rieder*
                                                  Eric Rieder

                                                  *Attorney for Defendants Sierra Universal Corp, UPC Holdings Ltd, Lviv Estate Holdings Ltd, and C Vanderbilt Management Ltd.*

## **CERTIFICATE OF SERVICE**

    I, Eric Rieder, hereby certify that on March 7, 2025, I caused a copy of the foregoing document to be served on counsel of record who are deemed to have consented to electronic service via ECF.

Dated: New York, New York  
       March 7, 2025                                                By:   */s/ Eric Rieder*  
                                                                                               Eric Rieder