## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

CHENMING HOLDINGS (HONG KONG)
LIMITED, *a Hong Kong limited company*,

                  Plaintiff,

     v.

VAL SKLAROV, TETYANA SKLAROV,
JAITEGH "JT" SINGH, JURIST IQ CORP.,
SIERRA UNIVERSAL CORP., UPC
HOLDINGS LTD, LVIV ESTATE
HOLDINGS LTD, C VANDERBILT
MANAGEMENT LTD.,

               Defendants.

Case No: 1: 24-cv-00935-KPF

### DEFENDANTS JAITEGH SINGH'S AND JURIST IQ CORP.'S REPLY
### MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS

DENTONS US, LLP
1221 Avenue of the Americas
New York, New York 10020
(212) 768-5344

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

ARGUMENT ............................................................................................................. 1

I.    Chenming's Claims are Barred By Contractual Waivers. .................................................. 1

II.   Chenming's Claims For Fraudulent Inducement (Count I) And Fraud (Count II) Against Singh Fail..................................................................................................... 4

      A.    No Misrepresentation or Omission by Singh............................................................ 4

      B.    Chenming Cannot Evade its Obligations to Plead Fraud with Particularity Against Singh under Rule 9(b). .............................................................. 6

      C.    Chenming Has Not Adequately Pled Justifiable Reliance...................................... 8

      D.    Chenming's Claims are Not Collateral to the Loan Agreements. ........................ 10

III.  Chenming Fails to Plead a Claim for Conversion. ........................................................ 11

IV.   Count III for Aiding And Abetting Should Be Dismissed................................................ 13

V.    Chenming Fails to Plead Claims for Conspiracy (Counts IV and VI)............................. 14

CONCLUSION........................................................................................................... 14

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AD Rendon Communications, Inc. v. Lumina Americas, Inc.*,
　2006 WL 1593884 (S.D.N.Y. June 7, 2006) .........................................................12

*Amalgamated Nat'l Health Fund v. Hickey Freeman Tailored Clothing, Inc.*,
　2024 WL 1330049 (S.D.N.Y. Mar. 28, 2024) .........................................................8

*Armored Grp., LLC v. Homeland Sec. Strategies, Inc.*,
　2009 WL 1110783 (S.D.N.Y. Apr. 21, 2009)..........................................................12

*Centro Empresarial Compresa S.A. v. Am. Movil, S.A.B. de C.V.*,
　17 N.Y.3d 269 (N.Y. App. 2011) .........................................................................3, 9

*Columbia Consultants, LLC v. Danucht Entm't, LLC*,
　222 A.D.3d 479 (1st Dep't 2023) ...........................................................................9

*Consol. Edison, Inc. v. Northeast Utilities*,
　426 F.3d 524 (2d Cir. 2005)...................................................................................2

*Consorcio Prodipe, S.A. de C.V. v. Vinci, S.A.*,
　544 F. Supp. 2d 178 (S.D.N.Y. 2008)....................................................................1

*Eagle One Roofing Contractors, Inc. v. Acquafredda*,
　2018 WL 1701939 (E.D.N.Y. Mar. 31, 2018).......................................................12

*Exchange Listing, LLC v. Inspira Technologies Ltd.*,
　661 F. Supp. 3d 134 (S.D.N.Y. 2023).....................................................................11

*First Hill Partners, LLC v. BlueCrest Cap. Mgmt. Ltd.*,
　52 F. Supp. 3d 625 (S.D.N.Y. 2014).......................................................................5

*In re FuBoTV Inc. Sec. Litig.*,
　2024 WL 1330001 (S.D.N.Y. Mar. 28, 2024) ....................................................9, 10

*GEM Advisors, Inc. v. Corporacion Sidenor, S.A.*,
　667 F. Supp. 2d 308 (S.D.N.Y. 2009).....................................................................6

*Generation Next Fashions Ltd. v. JP Morgan Chase Bank, NA.*,
　698 F. Supp. 3d 663 (S.D.N.Y. 2023).....................................................................11

*Grgurev v. Licul*,
　229 F. Supp. 3d 267 (S.D.N.Y. 2017).....................................................................12

ii

*JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*,
   306 F. Supp. 2d 482 (S.D.N.Y. 2004)........................................................................6

*Kim v. XP Sec., LLC*,
   200 A.D.3d 420 (1st Dep't 2021) ............................................................................9

*Landesbank Baden-Württemberg v. RBS Holdings USA Inc.*,
   14 F. Supp. 3d 488 (S.D.N.Y. 2014)......................................................................13

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
   797 F.3d 160 (2d Cir. 2015)....................................................................................7

*Maersk, Inc. v. Neewra, Inc.*,
   687 F. Supp. 2d 300 (S.D.N.Y. 2009)......................................................................7

*Meisel v. Grunberg*,
   651 F. Supp. 2d 98 (S.D.N.Y. 2009)........................................................................7

*Merkin v. Berman*,
   123 A.D.3d 523 (2014) ............................................................................................5

*Moses v. Martin*,
   360 F. Supp. 2d 533 (S.D.N.Y. 2004)....................................................................12

*Newman & Schwartz v. Asplunduh Tree Expert Co.*,
   102 F. 3d 660 (2d Cir. 1996)....................................................................................1

*Pentacon BV v. Vanderhaegen*,
   725 F. Supp. 3d 350 (S.D.N.Y. 2024)................................................................6, 11

*In re Platinum-Beechwood Litig.*,
   427 F. Supp. 3d 395 (S.D.N.Y. 2019)....................................................................13

*R.B. Development Co. v. Tutis Capital LLC*,
   2013 WL 12358006 (E.D.N.Y. Sept. 27, 2013) ....................................................12

*Ramiro Aviles v. S&P Glob., Inc.*,
   380 F. Supp. 3d 221 (S.D.N.Y. 2019)......................................................................5

*Schwartz v. Sensei, LLC*,
   2020 WL 5817010 (S.D.N.Y. Sept. 30, 2020)........................................................7

*Silvercreek Mgmt., Inc. v. Citigroup, Inc.*,
   346 F. Supp. 3d 473 (S.D.N.Y. 2018)....................................................................13

*Simon v. Weaver*,
   327 F. Supp. 2d 258 (S.D.N.Y. 2004)....................................................................11

*Spinelli v. National Football League*,
    903 F.3d 185 (2d. Cir. 2018)...............................................................................................10

*SPV Osus Ltd. v. UBS AG*,
    882 F.3d 333 (2d Cir. 2018)...............................................................................................13

*Susie Ong v. Chipotle Mexican Grill, Inc.*,
    2017 WL 933108 (S.D.N.Y. Mar. 8, 2017) ........................................................................8

*Wexner v. First Manhattan Co.*,
    902 F.2d 169 (2d Cir. 1990)..................................................................................................8

**Other Authorities**

Astor Capital Fund Ltd. Registration Statement, Business Search, In. Sec. of
    State, https://bsd.sos.in.gov/PublicBusinessSearch/BusinessFilings (June 28,
    2019) .....................................................................................................................................9

Shenzhen Stock Exchange, Archive Historical Data,
    https://www.szse.cn/English/siteMarketData/siteMarketDatas/lookup/archive/i
    ndex.html (last visited Mar. 7, 2025)...............................................................................10

Defendants Singh and Jurist respectfully submit this Reply in support of their Motion to Dismiss the SAC. The claims against Singh and Jurist suffer from insurmountable problems, which compel dismissal: (1) the claims are indisputably barred by contractual waivers and releases; and (2) Plaintiff fails to plead any material misrepresentation or omission attributable to Singh or Jurist that Plaintiff relied on that caused it any damages.

These fatal flaws are not addressed or overcome by the ad hominem attacks and speculative unsupported assertions espoused in Plaintiff's Opposition. The SAC should be dismissed, with prejudice, as to Singh and Jurist.

## ARGUMENT

## I.      Chenming's Claims are Barred By Contractual Waivers.

There is no merit to Chenming's argument that Singh and Jurist lack standing to enforce release clauses in the Loan Agreements that foreclose Plaintiff's claims. A party can be a third-party beneficiary even if not named in the contract. *Newman & Schwartz v. Asplunduh Tree Expert Co.*, 102 F. 3d 660, 662–63 (2d Cir. 1996).[1] Plaintiff is wrong that Defendants "cannot cite to any specific provision" of the Loan Agreements demonstrating that they are intended third-party beneficiaries. *See* Opposition (ECF No. 120), at 43–44. Under the unambiguous language of the Loan Agreements, Chenming expressly promised to ██████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████████████ ECF No. 102 ("Decl.") Exs. 1–2, Astor2 § IV(4); Ex. 3, UPC1 § 5.6; Ex. 4, Vanderbilt §§ 6(g), 16(l). Singh and Jurist, whom

---

[1] Because the language of the releases is general, "the release is to be construed most strongly against the releasor," who carries the burden of establishing the release should be limited. *Consorcio Prodipe, S.A. de C.V. v. Vinci, S.A.*, 544 F. Supp. 2d 178, 189–50 (S.D.N.Y. 2008).

Plaintiff alleges acted as escrow agent and attorney for the Lenders, fall squarely within these provisions. SAC ¶¶ 22, 46. [2]

There is no language in the Loan Agreements limiting third-party beneficiaries to those involved in the transaction at the time of execution; indeed, just the opposite. For example, the Astor2 Loan Agreements release ████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ Decl. Ex. 1 §§ IV(4), IX(17); Ex. 2 §§ IV(4), IX(16); *see also* Ex. 3, UPC1 § 5.6; Ex. 4, Vanderbilt §§ 6(g), 14, 16(l).

Language providing for agent and broker indemnity "clearly evidences an intent to permit enforcement by the third party," which Chenming's cited authority states would allow for third-party beneficiaries. *Consol. Edison, Inc. v. Northeast Utilities*, 426 F.3d 524, 527 (2d Cir. 2005).

Chenming is also incorrect that the releases do not apply to the fraud claims here. The scope of the releases is extremely broad. For instance, the Astor2 Loans Agreements █████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████ Decl. Ex. 1 §§ IV(4), IX(17); Ex. 2 §§ IV(4), IX(16); Ex. 3, UPC1 § 5.6; Ex. 4, Vanderbilt §§ 6(g), 16(l).

---

[2] That the release terms foreclose claims directed to Singh's and Jurist's alleged role as escrow agent and attorney after execution, funding, and alleged sale of the Collateral, provides no support for Plaintiff's contention that Singh and Jurist conspired to commit fraud. Opp. 45. That non sequitur has no basis in law or logic.

New York courts have interpreted similar language to encompass fraud and fraudulent inducement claims, even where the word "fraud" is not included. *Centro Empresarial Compresa S.A. v. Am. Movil, S.A.B. de C.V.*, 17 N.Y.3d 269, 277 (N.Y. App. 2011) (holding release of any and all claims "whether past, present or future, actual or contingent" waived fraud and fraudulent inducement claims as to subject of release).[3] Chenming's attempt to distinguish *Centro* is unpersuasive. Just as in that case, the release here was "fair and knowing" between represented, sophisticated parties who negotiated to release existing and unknown actions. *Id.* at 278.

Chenming's argument regarding the separate Jurist Release Agreement related to Jurist's Astor2 Loan escrow agent duties is similarly unavailing. Opp. 48–49; Decl. Ex. 5. The Jurist Release Agreement is not mere "correspondence." It is a letter *agreement* that Chenming executed to signify its assent thereto. *Id.* Further, under New York law, there is no obligation that a release be supported by consideration. *See* N.Y. Gen. Oblig. § 15-303. Nonetheless, consideration exists. Jurist offered the Release Agreement in exchange for forgoing certain due diligence steps. Decl. Ex. 5. Chenming (with Astor2) agreed to indemnify Jurist and Singh concerning any claims arising from Jurist's role as escrow agent, and released and waived any claims against them. *Id.* Jurist and Singh incurred risk in reliance upon the Release Agreement. The Jurist Release Agreement is valid and releases Jurist and Singh from any claims related to the Astor2 Loans.

---

[3] The *Centro* court further held that the release barred the fraudulent inducement claim, absent allegations the *release itself* was procured by "separate fraud." 17 N.Y.3d at 276. There are no such allegations here.

II.    **Chenming's Claims For Fraudulent Inducement (Count I) And Fraud (Count II) Against Singh Fail.**

A.    **No Misrepresentation or Omission by Singh.**

Nothing in Plaintiff's Opposition can remedy its failure to plead fraud with particularity against Singh. Plaintiff cannot dispute that the SAC does not identify any material ***pre-contractual*** misrepresentation of fact or omission ***by Singh*** that Chenming relied on to enter into the Loan Agreements.[4] Nor can Plaintiff dispute that the SAC fails to identify any ***post-contractual*** material misrepresentation ***by Singh*** upon which Chenming relied. Chenming buries in footnotes its critical admissions that it:

(1) did not rely on Singh's and Jurist's February 17, 2023 letter to make any repayments as to the Astor2 Loans (Opp. 50 n.16);

(2) did not rely on Singh's and Jurist's August 17, 2023 demand letter to make any repayments as to the UPCI Loan (*id.*)[5]; and

(3) "has yet to adduce specific facts regarding Singh's involvement with the Vanderbilt Loan" (*id.* 30 n.10).

Chenming's reliance on allegations not pleaded in the SAC cannot change this result. There are no facts pleaded that Singh ever had control over the Collateral Shares or their return. Yet, Plaintiff now argues in its Opposition that Singh had a purported duty to disclose the alleged

---

[4] Plaintiff cannot legitimately contend that Singh's possession of executed Chenming Loan Agreements or representation of Sklarov in litigation are factual allegations supporting a fraudulent inducement claim. By that strained logic, defense counsel in this case (and indeed the Court) could be subject to such a claim. Similarly, allegations from unrelated lawsuits with different parties are not facts supporting the claims here.

[5] Plaintiff's assertion that these writings "ensured that Plaintiff would continue to make payments under the other Sham Loans" or delayed Plaintiff's discovery that the Collateral Shares had been purportedly sold at least a year earlier is nonsensical and not supported by any facts. Opp. 50 n.16. The only other Loan alleged is the Vanderbilt Loan on which Plaintiff alleges it stopped making payments by March 2023, and there is no viable claim or damages attributable to any purported delay, if any. SAC ¶¶ 44–45.

sale of the Shares based on so called "partial statements" by Singh that "he and his law firm" were going to "process Plaintiff's requests to return the Collateral Shares as 'expeditiously as possible.'" (Opp. 35 (emphasis added)). The cited paragraphs (SAC ¶¶ 74–75) refer only to processing unspecified "requests" in connection with AML and KYC due diligence review, not processing requests to return the Collateral Shares. The Court should disregard Plaintiff's argument as not supported by allegations in the pleadings. Regardless, Chenming could not have relied on or suffered any damages as a result of this purported "partial statement," which occurred *after* Chenming alleges the Collateral Shares had been sold and it made its last Astor2 Loan payment. SAC ¶¶ 39, 71.

Thus, Plaintiff's additional duty to disclose arguments are irrelevant. They are also incorrect. An escrow agent's duties are limited to the scope of the escrow relationship. *See Ramiro Aviles v. S&P Glob., Inc.*, 380 F. Supp. 3d 221, 300 (S.D.N.Y. 2019) (dismissing claims against an escrow agent because the duty to disclose encompassed only "the status of the funds [escrow agent] held in escrow"). "Mistaken knowledge" requires the party to "possess superior knowledge, not readily available to the other" and to "know[] that the other is acting on the basis of mistaken knowledge." *First Hill Partners, LLC v. BlueCrest Cap. Mgmt. Ltd.*, 52 F. Supp. 3d 625, 638 (S.D.N.Y. 2014). There are no well-pled allegations that Singh knew that any Shares had been improperly sold or transferred (if they even had been). Moreover, this doctrine "applies only in business dealings between parties to a prospective transaction." *Merkin v. Berman*, 123 A.D.3d 523, 524 (2014) (internal quotation omitted). Singh is not a party to the underlying transaction nor was the transaction "prospective," since Chenming had already remitted its last Astor2 payment.

**B.    Chenming Cannot Evade its Obligations to Plead Fraud with Particularity Against Singh under Rule 9(b).**

Having failed to plead with particularity as to each Defendant as required under 9(b), Plaintiff spends much of its brief arguing why it should be allowed to lump all Defendants together. The factually inapposite cases cited in the Opposition confirm that a plaintiff can only circumvent the obligation to plead fraud with particularly as to each defendant in narrow circumstances, none of which apply to Singh here.

In both *Pentacon BV v. Vanderhaegen*, 725 F. Supp. 3d 350, 378–79 (S.D.N.Y. 2024) and *GEM Advisors, Inc. v. Corporacion Sidenor, S.A.*, 667 F. Supp. 2d 308, 332 n.9 (S.D.N.Y. 2009), the Courts attributed statements of one defendant to other defendants based on robust factual allegations—*wholly absent here*—that defendants were alter egos of each other. The Opposition fails to identify any allegation Singh or Jurist controlled or dominated the Lenders or Servicer Defendants, as required to impute liability to them. Chenming points to the fact that Singh owns Jurist, that they have legally represented Lenders or Val Sklarov, and that Singh allegedly opened some bank accounts and was briefly listed as "president" on a bank account opening form. Opp. 34. None of this remotely shows dominion over the Lenders or Servicer Defendants.

Chenming's conclusory allegations do not meet the requirements for pleading alter ego under New York law. The cases Plaintiff relies on recognize the lengthy list of veil-piercing factors and only find adequate pleading based on actual alleged facts of *inter alia* specific comingled funds, lack of formalities, and stripping of corporate assets by shareholders. *See, e.g.*, *JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*, 306 F. Supp. 2d 482, 286 (S.D.N.Y. 2004). Moreover, even if Chenming could demonstrate domination, it also needs to allege that Singh and Jurist used their "domination to commit a fraud or wrongdoing

that harmed Plaintiff." *Schwartz v. Sensei, LLC*, 2020 WL 5817010, at *9–10 (S.D.N.Y. Sept. 30, 2020). It has not done so here, asserting only non-cognizable breach of contract claims disguised as claims for fraud.

Plaintiff's selective quotation from *Meisel v. Grunberg* fails to disclose that the statement-maker was *the agent* of the defendant, who could therefore be held vicariously liable for the statements. 651 F. Supp. 2d 98, 120 (S.D.N.Y. 2009). That court dismissed claims against another defendant for whom the agency relationship was conclusorily alleged. *Id*. Here, there are no allegations that the Sklarovs or the Lenders are Singh's agents.[6] And Plaintiff offers no allegation, particular or otherwise, that Singh directed or otherwise could be responsible for statements of third-party intermediaries Liu, Zhang, and Ling with whom Chenming communicated. SAC ¶¶ 52, 86, 100–01.

Plaintiff's reliance on *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC* is also misplaced. 797 F.3d 160, 173 (2d Cir. 2015). The Second Circuit declined to allow group pleading against Defendant SAI, who, like Singh, was alleged to be affiliated with other defendants but not connected to any particular misstatement in the documents. In such circumstances, the court held that a plaintiff "will need to plead, with the requisite particularity, a material misrepresentation or omission ***by SAI***." *Id*. (emphasis added).

Since the group pleading doctrine does not apply here, Plaintiff's bold statement that it "need not identify specific statements" by Singh is wrong. Opp. 31. The cases cited in support of this statement are likewise irrelevant. They each address the level of specificity and precision required with respect to the alleged false statement. *See id.* None of these cases suggest Plaintiff

---

[6] *Maersk, Inc. v. Neewra, Inc.*, 687 F. Supp. 2d 300, 322 (S.D.N.Y. 2009), in which alleged misstatements were attributed to co-conspirators, is also not applicable because Chenming has not adequately pled a conspiracy. *See* Motion, ECF No. 103, Section I.G; Section V, *infra*.

has carte blanche to allege *no false statements* by Singh at all when that is an essential element of a fraud claim.[7]

While Rule 9(b) may in certain circumstances allow allegations "upon information and belief" as to facts that are peculiarly within the opposing party's knowledge, that exception also "must not be mistaken for license to base claims of fraud on speculation and conclusory allegations." *Amalgamated Nat'l Health Fund v. Hickey Freeman Tailored Clothing, Inc.*, 2024 WL 1330049, at *2 (S.D.N.Y. Mar. 28, 2024).[8] Chenming must still "adduce specific facts supporting a strong inference of fraud *by Singh* to sustain claims against him. *Wexner v. First Manhattan Co.,* 902 F.2d 169, 172–73 (2d Cir. 1990). Plaintiff has not done so. There are no actionable false statements or omissions by Singh pled in the SAC, no facts demonstrating that Singh could be vicariously liable for the alleged false statements of others, and no facts supporting Chenming's speculation "upon information and belief" that Singh concealed his identity in communications with Chenming. Rather, the SAC pleads exactly the opposite—that Singh communicated and signed documents as himself, and publicly held himself out as the CEO of Jurist. Counts I and II should be dismissed as to Singh.

## C.    Chenming Has Not Adequately Pled Justifiable Reliance.

Counts I and II also fail for failure to plead justifiable reliance. Plaintiff's assertion of "information asymmetry" does not excuse its obligation to plead justifiable reliance, which is indispensable to a fraud claim. Plaintiff does not allege any steps it took to diligence the third

---

[7] Chenming also fails to adequately allege scienter, which must be "separately pled and individually supportable as to each defendant." *Susie Ong v. Chipotle Mexican Grill, Inc.*, 2017 WL 933108, at *15 n.7 (S.D.N.Y. Mar. 8, 2017).

[8] It also plainly does not apply to the very misrepresentations Plaintiff asserts were *made to it*. Yet, here Plaintiff even alleges "upon information and belief" the content of the purported false statements in the documents it claims to have received. *See, e.g.*, SAC ¶ 102.

parties who introduced it to Lenders or the Lenders themselves, even though Plaintiff acknowledges that it could have uncovered information about Lenders through publicly available information. SAC ¶¶ 55 n.3, 100. Likewise, Plaintiff asserts that it had "no way" of knowing Val Sklarov's involvement, which Chenming claims would have been critical information. Opp. 41. Yet, the same public filings Plaintiff points to (SAC ¶ 155), identify Val Sklarov as the Astor Capital CEO at the time of the Astor2 Loan transaction.[9] Moreover, nowhere are there any facts pled to support an inference Chenming would have taken steps to investigate if it had learned of Sklarov's name at the time.

A fraud claim is properly dismissed, where, as here, "plaintiff's pleadings do not demonstrate that [it] exercised ordinary diligence in investigating defendant's representations, despite their alleged importance to the agreement." *Kim v. XP Sec., LLC*, 200 A.D.3d 420, 421 (1st Dep't 2021). Moreover, New York courts will not find justifiable reliance where a party could reasonably have discovered that relevant information was peculiarly within the knowledge of the other party and failed to take steps to acquire it. *Centro*, 17 N.Y.3d at 278–79.

This diligence failure was particularly unreasonable given that Plaintiff specifically acknowledged in each Loan Agreement ██████████████████████████████████████ ███████████████████████████████. Decl. Exs. 1–2, Astor2 § IV(3); Ex. 3, UPC1 § 5.3; Ex. 4, Vanderbilt § 6(c). Chenming has not alleged any representations that could have fraudulently induced it to agree to the non-reliance provisions. Thus, Chenming's alleged reliance is not justifiable "as a matter of law." *Columbia Consultants, LLC v. Danucht Entm't, LLC*, 222

---

[9] *See* Astor Capital Fund Ltd. Registration Statement, Business Search, In. Sec. of State, https://bsd.sos.in.gov/PublicBusinessSearch/BusinessFilings (June 28, 2019). "[W]hen deciding a motion to dismiss, a court may take judicial notice of the fact that . . . regulatory filings contained certain information." *In re FuBoTV Inc. Sec. Litig.*, 2024 WL 1330001, at *3 (S.D.N.Y. Mar. 28, 2024) (internal quotations omitted).

A.D.3d 479, 480 (1st Dep't 2023) (finding reliance on misrepresentation unreasonable where contract stipulated non-reliance except as specified therein).

Additionally, nowhere in the SAC does Chenming factually plead what was false about the Margin Call Notices or how it was "tricked" into depositing additional shares when ListCo's share price is public information. *See* Motion, ECF No. 103, at 17. Relegating its entire response to a footnote, Chenming asserts for the first time that Defendants' alleged sale of the Collateral Shares caused the decline in ListCo's share price which triggered the Margin Calls. Opp. 27 n.8. But during the period between May 2020 and August 2021 when Plaintiff alleges the Collateral Shares were sold or transferred (SAC ¶ 39), ListCo's share price *increased* approximately 60%.[10] Chenming's attempted amendment by Opposition is not only procedurally improper, but futile. The Margin Call notices cannot sustain a fraud claim.

### D.    Chenming's Claims are Not Collateral to the Loan Agreements.

Plaintiff spends significant time on *Spinelli v. National Football League*, 903 F.3d 185 (2d. Cir. 2018), which refutes its argument. The *Spinelli* court explained allegations like those here that Defendants never intended to perform (SAC ¶¶ 198, 204, 225, 230) do not state a claim for fraud: "no separate claim for fraud will lie" when a plaintiff alleges a defendant "misrepresented its intent to perform under a contract . . . . [T]he plaintiff must instead bring an action for breach of contract." *Spinelli*, 903 F.3d at 209.

Also as directly applicable here, the *Spinelli* court explained there could be no viable fraud claim if the express terms of the contract address the alleged misconduct. *Id.* at 209.

---

[10] Shenzhen Stock Exchange, Archive Historical Data, https://www.szse.cn/English/siteMarketData/siteMarketDatas/lookup/archive/index.html (ListCo's share price was $4.93 on May 6, 2020 and $ 7.86 August 31, 2021). A court may take judicial notice of publicized stock prices without converting a motion to dismiss into a motion for summary judgment. *In re FuBoTV Inc. Sec. Litig.*, 2024 WL 1330001, at *4.

Whether Plaintiff is entitled to return of the Collateral Shares (which is not pled but merely assumed in the SAC) is indisputably governed by the Loan Agreements, which expressly dictate the bases upon which the respective Lenders may assert Events of Default, and sell, transfer, or return the Collateral Shares. Decl. Exs. 1–2, Astor2 §§ II(7), V(4), VI(2)–(4); Ex. 3, UPC §§ 3.3, 4.4, 9.1; Ex. 4, Vanderbilt §§ 4(c), 9, 11(a)–(c). Thus, this case is distinguishable from *Pentacon*, which concerned alleged misrepresentations about the value of the company being purchased that were separate and distinct from the express contract terms. 725 F. Supp. 3d at 373, 375–76. It is like *Exchange Listing, LLC v. Inspira Technologies Ltd.*, where to determine claims of wrongdoing, the Court must look to the terms of the agreements. 661 F. Supp. 3d 134, 150–51 (S.D.N.Y. 2023) (Failla, J.).

### III.    Chenming Fails to Plead a Claim for Conversion.

Because Plaintiff pleads no facts the Lenders' retention of Collateral Shares was unauthorized, this claim necessarily fails. Beyond that, an essential element of a conversion claim against Singh is that Chenming demonstrate *Singh* exercised unauthorized dominion over the Collateral Shares. *Generation Next Fashions Ltd. v. JP Morgan Chase Bank, NA.*, 698 F. Supp. 3d 663, 681 (S.D.N.Y. 2023) (granting dismissal where no alleged *unauthorized* dominion); *Simon v. Weaver*, 327 F. Supp. 2d 258, 262 (S.D.N.Y. 2004) (granting dismissal as to defendants not involved in co-defendants' converting act). Here, Chenming merely alleges that Singh acted as attorney, agent, and receiver of one Chenming loan repayment for Astor2. SAC ¶¶ 22, 46, 139, 140. It asserts no facts that Singh *ever* had possession or control of the Collateral Shares.

The Opposition confirms Chenming cannot support its assertions, arguing it should be allowed to take discovery to learn facts that should have been pled in its SAC. Opp. 53−56. Chenming is not entitled to discovery on speculative claims.[11]

Allegations the Lenders refused to return/sold the Collateral Shares and used the proceeds for other transactions, at most allege contractual breaches. Opp. 53; *Armored Grp., LLC v. Homeland Sec. Strategies, Inc.*, 2009 WL 1110783, at *3 (S.D.N.Y. Apr. 21, 2009) (failure to return a contractual deposit is not distinct claim for conversion).

Nor does a contract claim suddenly morph into a conversion claim by alleging defendants engaged in a "pattern of deception." Opp. 54. Chenming's reliance on *Moses* is misplaced; there the pattern of deception was related to racketeering under the RICO Act and did not relate to the conversion analysis. 360 F. Supp. at 545. Reliance on *R.B. Development Co. v. Tutis Capital LLC* is unavailing for the same reason. 2013 WL 12358006, at *13−16 (E.D.N.Y. Sept. 27, 2013). Chenming does not cite to any case discussing a pattern of deception under a conversion analysis.

Chenming's argument that its conversion claim is distinct because it seeks punitive damages is refuted by the very case it cites. Opp. 54−55. In *AD Rendon Communications, Inc. v. Lumina Americas, Inc.*, like here, plaintiff asserted conversion, the gist of which was contractual breach, and sought to avoid dismissal by arguing punitive damages make the claim distinct. 2006 WL 1593884, at *4−6 (S.D.N.Y. June 7, 2006). The court rejected this argument. *Id.*

---

[11]  Chenming's cases do not offer support. In *Grgurev v. Licul*, the information to be discovered was a specific sum of money, and the fraudulent conversion was adequately alleged without discovery. 229 F. Supp. 3d 267, 288 (S.D.N.Y. 2017). In *Eagle One Roofing Contractors, Inc. v. Acquafredda*, plaintiff specifically alleged that the proceeds were actually distributed. 2018 WL 1701939, at *16 (E.D.N.Y. Mar. 31, 2018).  In *Moses v. Martin*, which Chenming heavily cites, plaintiff pled the defendant's actual act. 360 F. Supp. 2d 533, 541−42 (S.D.N.Y. 2004).

**IV.    Count III for Aiding And Abetting Should Be Dismissed.**

Nothing in the Opposition can address Chenming's failure to plead a requisite underlying fraud, or facts Jurist (i) knew of any fraud, (ii) provided substantial assistance to advance such fraud, or (iii) that the substantial assistance proximately caused the harm allegedly suffered. Chenming provides no rationale for how Jurist's serving as an escrow agent for one loan payment and sending a Demand Letter Chenming ignored—*years after the Loan Agreements were executed and the Shares allegedly sold*—advanced the alleged fraud or proximately caused the Lenders to withhold the Collateral Shares. Indeed, Jurist was not formed until January 7, 2021, after three of the four loan were executed and much of the Shares allegedly sold or transferred. SAC ¶¶ 21, 56, 88. Thus, even if Chenming's latest speculation were true that Jurist was "created for purposes of the fraud," it would not matter because Jurist is not alleged to have done anything that advanced the purported fraud or proximately caused harm to Chenming.[12]

Plaintiff relies on cases where, unlike here, the complainant pled specific facts, not speculation, that the defendant was involved in activities that caused the alleged harm. *See, e.g.*, *Silvercreek Mgmt., Inc. v. Citigroup, Inc.*, 346 F. Supp. 3d 473, 491 (S.D.N.Y. 2018) (knowledge and substantial assistance pled based on testimony of numerous employees that defendant contributed to the design and structure of the subject transactions they knew were shams); *Landesbank Baden-Württemberg v. RBS Holdings USA Inc.*, 14 F. Supp. 3d 488, 514 (S.D.N.Y. 2014) (complaint contained allegations as to each defendant's role in the transactions and preparation of the offering materials that induced investors to invest in the deals); *In re Platinum-Beechwood Litig.*, 427 F. Supp. 3d 395, 480 (S.D.N.Y. 2019) (unlike Jurist, who did

---

[12] The Second Circuit has also held merely creating an "air of legitimacy" after a contract was executed is insufficient to state an aiding and abetting claim. *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 346 (2d Cir. 2018).

not even exist when the first three loans were executed, defendant here was the founder of the alleged fraudulent investment fund).

Count III fails as to Jurist.

**V.    Chenming Fails to Plead Claims for Conspiracy (Counts IV and VI).**

Conclusory assertions that "Singh and Jurist IQ agreed to participate—and did participate—in the conspiracy," that their alleged conduct is "far from consistent with Singh and Jurist providing legal services for a client," and that the SAC supports a "strong inference of a corrupt agreement" are not facts evidencing a corrupt agreement and participation in an alleged scheme to defraud. Opp. 63. Plaintiff alleges no specific agreement by Jurist or Singh to participate in any conspiracy, and it fails to connect Jurist or Singh to an alleged scheme to induce Plaintiff into the Loan Agreements or to convert the Shares. Unlike here, the plaintiffs in the cases Chenming cites each pled specific facts demonstrating knowledge of and engaging in fraudulent acts. Opp. 63–64. Chenming's deficient claim does not entitle it to discovery "to uncover" facts necessary to sustain it. *Id.* 65.[13]

Counts IV and VI fail.

<u>**CONCLUSION**</u>

For the foregoing reasons and those set forth in the Motion, the Court should dismiss the claims against Singh and Jurist in the SAC, in their entirety, with prejudice.

---

[13] Chenming's theory of the cases flip flops as needed. Defendants allegedly "are one and the same" when it suits Chenming to lump all Defendants together, but separate and distinct when arguing the "intracorporate conspiracy doctrine" does not apply or Defendants lack standing to enforce releases that foreclose the claims here. Opp. 63.

Dated:  March 7, 2025                    Respectfully submitted,

*/s/  Justine N. Margolis*
**DENTONS US LLP**
Justine N. Margolis
John J. Hay
Charles M. Farrell
1221 Avenue of the Americas
New York, New York 10020
Tel: (212) 768-6700
justine.margolis@dentons.com
john.hay@dentons.com
charles.farrell@dentons.com

*Counsel for Defendants Jaitegh "JT" Singh and Jurist IQ Corp.*

15

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Civil Rule 7.1, the undersigned counsel hereby certifies that this brief complies with the word count limitation set forth in the Court's Order granting Defendants' Application for Leave to File Excess Pages (ECF No. 126). As measured by the word processing system to prepare this brief, there are 4,458 words in this brief.

Dated:  March 7, 2025

*/s/  Justine N. Margolis*
Justine N. Margolis

**DENTONS US LLP**
*Counsel for Defendants Jaitegh "JT" Singh and Jurist IQ Corp.*

16