UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CHENMING HOLDINGS (HONG KONG)
LIMITED, *a Hong Kong limited company*,

               Plaintiff,

          -v.-

VAL SKLAROV, TETYANA SKLAROV,
JAITEGH "JT" SINGH, JURIST IQ CORP,
SIERRA UNIVERSAL CORP, UPC HOLDINGS
LTD, LVIV ESTATE HOLDINGS LTD, and
C VANDERBILT MANAGEMENT LTD,

               Defendants.

24 Civ. 935 (KPF)

**OPINION AND ORDER**

---

KATHERINE POLK FAILLA, District Judge:

     Plaintiff Chenming Holdings (Hong Kong) Limited ("Plaintiff" or "Chenming") entered into loan agreements, each of which was secured by collateral, with three nonparty lenders. Plaintiff alleges that each lender ultimately failed to return Plaintiff's collateral. Plaintiff brings the instant action not against the lenders, but against individuals and entities less directly involved in the loans: Val Sklarov, Tetyana Sklarov, Jaiteigh "JT" Singh, Jurist IQ Corp ("Jurist IQ"), Sierra Universal Corp ("SUC"), UPC Holdings Ltd ("UPCH"), Lviv Estate Holdings Ltd ("Lviv"), and C Vanderbilt Management Ltd. ("CVM") (collectively, "Defendants"). In broad summary, Plaintiff alleges that Defendants engaged in a fraudulent scheme to deprive Plaintiff of the collateral it used to secure the loan agreements.

     Before the Court are three separate motions to dismiss Plaintiff's Second Amended Complaint (the "SAC"), the operative pleading in this case: one filed

by Defendants Mr. Sklarov and Ms. Sklarov (the "Individual Defendants"); one filed by Defendants Mr. Singh and Jurist IQ (the "Legal Services Defendants"); and one filed by Defendants SUC, UPCH, Lviv, and CVM (the "Loan Servicer Defendants"). Each group of Defendants has moved to dismiss the SAC for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). The Individual Defendants also move to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), and for lack of personal jurisdiction under Rule 12(b)(2).

For the reasons set forth below, the Court concludes that it lacks subject matter jurisdiction to hear this case. As such, it grants the Individual Defendants' motion to dismiss under Rule 12(b)(1) without prejudice. Because the Court lacks subject matter jurisdiction over the case, it declines to consider Defendants' other arguments.

## BACKGROUND[1]

### A.    Factual Background

Plaintiff "Chenming is a company organized under the laws of the Hong Kong Special Administrative Region." (SAC ¶ 3). It is the "shareholder of the

---

[1]    This Opinion draws most of its facts from the redacted public version of the Second Amended Complaint (the "SAC" (Dkt. #97)). *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009). Because jurisdiction is at issue, the Court also relies, as appropriate, on material beyond the SAC, such as certain declarations and the exhibits attached thereto. *See Makarova* v. *United States*, 201 F.3d 110, 113 (2d Cir. 2000) ("In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court … may refer to evidence outside the pleadings."); *Bates* v. *Offit Kurman Att'ys at L. LLP*, No. 19 Civ. 2814 (KPF), 2019 WL 7067092, at *3 (S.D.N.Y. Dec. 23, 2019). For example, the Court relies on information contained in the redacted public versions of the supplemental declarations of Defendants Tetyana Sklarov ("T. Sklarov Supp. Decl." (Dkt. #130)) and Val Sklarov ("V. Sklarov Supp. Decl." (Dkt. #131)), as well as the supplemental declaration of Plaintiff's attorney, Vincent Filardo ("Filardo Supp. Decl." (Dkt. #151)).

public company Shandong Chenming Paper Holdings Limited" ("ListCo").  (*Id.*
¶ 34).  According to the SAC, Plaintiff was duped into entering into fraudulent
loan agreements with three nonparty lenders: Astor Asset Management 2
Limited, Union Pacific Capital 1 Ltd., and Cornelius Vanderbilt Capital
Management LTD.  (*Id.* ¶¶ 17, 56, 88, 104).  Plaintiff secured those loans by
pledging shares of ListCo as collateral.  (*Id.* ¶¶ 35, 57, 92, 108, 111).  Plaintiff
alleges that it performed under the loan contracts by making payments on the
loans.  (*Id.* ¶¶ 38, 40, 44).  And yet, it claims that the nonparty lenders
wrongfully declined to return the collateral shares Plaintiff had used to secure
the loans.  (*Id.* ¶¶ 39-40, 46, 49-50).

Plaintiff brought this suit against three sets of Defendants — the Loan
Servicer Defendants, the Legal Services Defendants, and the Individual
Defendants.  Plaintiff alleges that Defendants lured Plaintiff into entering into
the sham loan agreements with the nonparty lenders (SAC ¶¶ 181-191),
defrauded Plaintiff through the course of the loan period (*id.* ¶¶ 194-206), and
impeded Plaintiff's efforts to recover the collateral (*id.* ¶¶ 121-127).  In
consequence, Plaintiff asserts claims for (i) fraud in the inducement against the
Individual Defendants and Mr. Singh; (ii) fraud against the Individual
Defendants and Mr. Singh; (iii) aiding and abetting fraud against the Loan
Servicer Defendants and Jurist IQ; (iv) conspiracy to commit fraud against all

---

For ease of reference, the Court refers to the Individual Defendants' memorandum of
law in support of their motion to dismiss as "Sklarov Br." (Dkt. #112); to Plaintiff's
memorandum of law in opposition to the motion to dismiss as "Pl. Opp." (Dkt. #120);
and to the Individual Defendants' reply memorandum of law in support of the motion to
dismiss as "Sklarov Reply" (Dkt. #128).

Defendants; (v) conversion against the Individual Defendants and Mr. Singh; and (vi) conspiracy to commit conversion against all Defendants.

In all, Plaintiff alleges a complex web of connection and control between and among each Defendant and the nonparty loan providers. (*See* SAC ¶¶ 17-50). According to Plaintiff, the details remain hazy because Defendants — especially Mr. Sklarov — used aliases and shell companies to hide their identities and facilitate their dealings. (*Id.* ¶¶ 4, 32, 62-63).

The Loan Servicer Defendants are the corporations to which Plaintiff made payments on the allegedly fraudulent loans. (SAC ¶¶ 38, 44). As alleged in the SAC, SUC is a Wyoming corporation with a "principal address" in Casper, Wyoming. (*Id.* ¶ 8). UPCH is a New York corporation with its principal place of business in New York. (*Id.* ¶ 9). Lviv is New York domestic business corporation with its principal place of business in Georgia. (*Id.* ¶ 10). CVM is a New York corporation with its principal place of business in New York. (*Id.* ¶ 11).

The Legal Services Defendants Mr. Singh and Jurist IQ are alleged to have facilitated the fraudulent lending scheme. (SAC ¶¶ 17-18, 21). Mr. Singh is a registered New York attorney and the proprietor of Singh Law Firm, P.A., which has offices in New York and Miami. (*Id.* ¶ 6). He is also the Chief Executive Officer of Jurist IQ, a New York corporation with its "principal address" in New York. (*Id.* ¶¶ 6-7).

As alleged in the SAC, the Individual Defendants Mr. Sklarov and Ms. Sklarov established the Loan Servicer Defendants UPCH, Lviv, and CVM. (SAC

¶ 14).  They are — along with Mr. Singh — the "ultimate beneficiary owners and/or alter egos" of the entities that provided the loans that gave rise to Plaintiff's claims.  (*Id.* ¶¶ 17-21, 24).

Plaintiff alleges, upon information and belief, that the Individual Defendants "resid[e] at 142 Gold Springs Court, Canton, Georgia 30114" (the "Georgia address") "and/or in Chicago, Illinois."  (SAC ¶¶ 4-5).  Plaintiff later refers to the Georgia address — which is also Lviv's alleged "principal place of business" — as Mr. Sklarov's "home address."  (*Id.* ¶ 10).  The SAC bases this assertion on the following: (i) a sworn witness statement from a separate English proceeding, in which Mr. Sklarov identified his residence as the Georgia address and stated that he has "lived in the USA most of [his] adult life [and] consider[s] [him]self an American" (*id.* ¶ 4 n.1); and (ii) a 2018 sworn affidavit that Mr. Sklarov filed in Georgia state court affirming, among other things, that his family was "on the imminent verge of moving to a shelter and becoming a public charge" (*id.* ¶ 161).

The Sklarovs provided additional insight into their living situation via declarations supported in connection with their Rule 12(b)(1) motion.  Ms. Sklarov avers that she is "a citizen of Ukraine and three other countries" and, further, that she is "not and ha[s] never been a citizen of the United States." (T. Sklarov Supp. Decl. ¶ 3).  She also asserts that she has been "domiciled" in Ukraine her "entire life," calling it her "fixed home and principal establishment."  (*Id.* ¶ 4).  In support, she provides evidence in the form of a Ukrainian Passport (Dkt. #130-1); a Ukrainian Taxpayer Identification Number

Card (Dkt. #130-2); a Ukrainian bank account (Dkt. #130-3); and an Extract from the Registrar of the Territorial Community of Lviv (Dkt. #130-4).  Ms. Sklarov further states that she does not currently live in Ukraine due to the country's ongoing conflict with Russia, and that she instead lives in "Greece with [her] husband Val Sklarov and [their] children."  (T. Sklarov Supp. Decl. ¶¶ 5-6).  In support of her Greek residence, she provides evidence of two Greek car registrations (Dkt. #130-5, 130-6), and certificates of attendance showing that her children attend school in Greece (Dkt. #130-7).

Mr. Sklarov attests that he is "a naturalized citizen of the United States and a citizen of two other countries."  (V. Sklarov Supp. Decl. ¶ 3).  He further states that he had been "domiciled in Ukraine . . . since 2011."  (*Id.* ¶ 4).  In support, he attaches evidence of a Ukrainian Permanent Residence Permit (Dkt. #131-1), and a Ukrainian Taxpayer Identification Number Card, which shows a May 15, 2015 date of registration (Dkt. #131-2).  Mr. Sklarov, like Ms. Sklarov, states that he does not currently live in Ukraine due to the country's ongoing conflict with Russia and instead lives "in Greece with [his] wife … and [their] children."  (V. Sklarov Supp. Decl. ¶¶ 5-6).  In support of his Greek residence, he provides a utility bill in his name for his home in Greece (Dkt. #131-3), and certificates of attendance showing that his children attend school in Greece (Dkt. #131-4).

After the briefing closed, Plaintiff filed an attorney declaration providing further evidence related to Mr. Sklarov's whereabouts.  This declaration details Mr. Sklarov's 2025 participation in a New York state court proceeding, in which

Mr. Sklarov moved to vacate a 2022 arrest warrant so that he could enter the United States to deal with a family medical emergency.  (Filardo Supp. Decl. ¶¶ 5-7, 10-11).

In that proceeding, Mr. Sklarov submitted a March 21, 2025 affidavit indicating that he had appeared in person before a notary in New York. (Filardo Supp. Decl. ¶ 8; *see also* Dkt. #151-1 at 3).  The state court held a hearing on June 2, 2025, at which it expressed confusion over whether Mr. Sklarov was in New York, as the affidavit suggested, or outside the country. (Filardo Supp. Decl. ¶ 12; *see also* Dkt. #151-4 at 24:15-26:6).  The state court expressed the same concerns in an interim order it issued that same day denying Mr. Sklarov's motion to vacate the arrest warrant.  (Filardo Supp. Decl. ¶ 14; *see also* Dkt. #151-6 at 2).  Mr. Sklarov later complained about the state court's ruling in a letter.  (Filardo Supp. Decl. ¶ 18; *see also* Dkt. #151-9).  He signed that letter with the Georgia address that Plaintiff in the instant case alleges is his home address.  (Filardo Supp. Decl. ¶ 19; *see also* Dkt. #151-9 at 1).  Yet, in the same letter, Mr. Sklarov stated that he had "not set foot in the United States in several years" and had signed the March 21, 2025 affidavit when he was "physically in Europe."  (Dkt. #151-9 at 1).

On June 4, 2025, the notary for Mr. Sklarov's March 21, 2025 affidavit filed his own affidavit in the state court proceeding explaining that he had made a mistake, and that Mr. Sklarov had not been physically present during notarization.  (Filardo Supp. Decl. ¶ 15; *see also* Dkt. #151-7).  The state court held a hearing that day, during which Mr. Sklarov stated that he was in

Europe, most likely Greece, when he signed the affidavit.  (Filardo Supp. Decl. ¶ 17; *see also* Dkt. #151-8 at 11:18-12:3).  At that hearing, the Clerk of Court asked Mr. Sklarov under oath what his "[h]ome or business" address was, and he again provided the Georgia address.  (Filardo Supp. Decl. ¶ 21; *see also* Dkt. #151-8 at 10:7-13).  Two days later, on June 6, 2025, Mr. Sklarov wrote another letter to the state court in which he again noted that he had been unable to enter the United States for the past three years.  (Filardo Supp Decl. ¶¶ 24, 26; *see also* Dkt. #151-10 at 2).  No further updates regarding the state court case have been provided.

## B.    Procedural Background

This litigation commenced on February 8, 2024, when Plaintiff filed a complaint against unnamed defendants.  (Dkt. #1).  On February 27, 2024, the Court ordered expedited discovery to assist Plaintiff in determining the identity of these unknown defendants.  (Dkt. #10).  Discovery involved subpoenaing three nonparty banks.  (*Id.*).  But one "refused to produce any documents responsive to the court-ordered subpoena" until the Court entered a confidentiality order.  (Dkt. #16).  In response, the Court entered a Discovery Confidentiality Order on March 28, 2024.  (Dkt. #18).

Discovery proceeded, and based on information received from the nonparty banks, Plaintiff filed an Amended Complaint on June 28, 2024, that named the current Defendants.  (Dkt. #30).  Defendants were served between July 2, 2024, and July 31, 2024.  (Dkt. #47-54).  Initially, Plaintiff struggled to serve the Individual Defendants.  Between July 2, 2024, and July 20, 2024,

Plaintiff attempted to serve Mr. Sklarov and Ms. Sklarov at their alleged Georgia address seven times, but each time it appeared that no one was home, and the package from the first attempt remained at the front door. (Dkt. #52 at 4; Dkt. #53 at 4). On July 25, 2024, Plaintiff unsuccessfully attempted to serve the Individual Defendants both in Illinois and at a different address in Georgia. (Dkt. #52 at 2-3; Dkt. #53 at 2-3). Plaintiff eventually served the Individual Defendants on July 31, 2024, by both mailing the summons and affixing it to the door of the Georgia address, as specified in New York Civil Practice Law and Rules Section 308. (Dkt. #52 at 1; Dkt. #53 at 1).

On September 13, 2024, both the Loan Servicer Defendants and the Legal Services Defendants informed the Court that they intended to move to dismiss Plaintiff's Amended Complaint. (Dkt. #61, 64). The Individual Defendants did the same on October 10, 2024 (Dkt. #74), one day after a Certificate of Default was entered against them (Dkt. #72). On October 29, 2024, the Court held a pre-motion conference. (October 29, 2024 Minute Entry). The next day, the Court denied Plaintiff's proposed default judgment against the Individual Defendants because the latter had appeared in the action and attended the pre-motion conference. (Dkt. #88).

On November 22, 2024, Plaintiff filed its SAC, the operative pleading in this action. (Dkt. #89). Plaintiff originally filed the SAC under seal but then filed a redacted version on December 20, 2024. (Dkt. #97). On January 6, 2025, the Legal Services Defendants, the Loan Servicer Defendants, and the Individual Defendants filed separate motions to dismiss the SAC and

memoranda of law in support thereof.  (Dkt. #101, 103, 104, 106, 107, 109, 111, 112, 113).  The Legal Services Defendants also submitted a declaration of Mr. Singh (Dkt. #102, 105), and the Individual Defendants submitted declarations of Ms. Sklarov (Dkt. #114) and Mr. Sklarov (Dkt. #115).  Plaintiff filed its omnibus opposition brief on February 14, 2025.  (Dkt. #120). Defendants then filed their reply briefs on March 7, 2025.  (Dkt. #128, 132, 134, 136, 137)  In addition, the Individual Defendants filed the supplemental declarations of Ms. Sklarov (Dkt. #130) and Mr. Sklarov (Dkt. #131), on March 7, 2025.

On June 27, 2025, about three-and-a-half months after briefing had closed, Plaintiff filed a letter motion requesting leave to file a declaration relaying the events from the New York state court proceeding to which Mr. Sklarov was a party.  (Dkt. #147).  The Court granted the request on June 30, 2025.  (Dkt. #148).  Plaintiff then submitted the supplemental declaration of its attorney, Mr. Filardo.  (Dkt. #151).  The Individual Defendants moved to respond to Plaintiff's declaration (Dkt. #149), which motion the Court granted on July 7, 2025 (Dkt. #150).  They filed their response on July 18, 2025, concluding briefing as to the three motions.  (Dkt. #152).

## DISCUSSION

### A.    Applicable Law

#### 1.    Motions Containing Both Jurisdictional and Merits-Based Arguments

"A court facing challenges as to both its jurisdiction . . . and the sufficiency of any claims raised must first address the jurisdictional question."

*Lugones* v. *Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 234 (S.D.N.Y. 2020) (internal quotation marks omitted) (quoting *Cohen* v. *Facebook, Inc.*, 252 F. Supp. 3d 140, 148 (E.D.N.Y. 2017)); *see also Arrowsmith* v. *United Press Int'l*, 320 F.2d 219, 221 (2d Cir. 1963). Thus, the Court first considers the Individual Defendants' motion to dismiss Plaintiff's claims for lack of subject matter jurisdiction under Rule 12(b)(1). Because the Court concludes that it lacks subject matter jurisdiction, it does not address the Individual Defendants' Rule 12(b)(2) motion or any of Defendants' Rule 12(b)(6) motions. *See Herrick Co., Inc.* v. *SCS Commc'ns, Inc.*, 251 F.3d 315, 322 (2d Cir. 2001) ("We cannot avoid addressing the threshold question of jurisdiction simply because our finding that federal jurisdiction does not exist threatens to prove burdensome and costly[.]" (citing *E.R. Squibb & Sons, Inc.* v. *Accident & Cas. Ins. Co.*, 160 F.3d 925, 929-30 (2d Cir. 1998))).

### 2. Subject Matter Jurisdiction

A district court may only hear a case that it has "the statutory or constitutional power to adjudicate." *Makarova* v. *United States*, 201 F.3d 110, 113 (2d Cir. 2000). If the court lacks that authority, it must dismiss the case for lack of subject matter jurisdiction. *Id.*; *see also United Food & Com. Workers Union, Local 919* v. *Centermark Props. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994) ("Where jurisdiction is lacking, . . . dismissal is mandatory."). "A 'plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.'" *Bates* v. *Offit*

*Kurman Att'ys at L. LLP*, No. 19 Civ. 2814 (KPF), 2019 WL 7067092, at *2 (S.D.N.Y. Dec. 23, 2019) (quoting *Makarova*, 201 F.3d at 113).

In determining whether subject matter jurisdiction exists, courts "appl[y] a 'time-of-filing rule' that 'measures all challenges to subject-matter jurisdiction . . . against the state of facts that existed at the time of filing.'" *Finnegan* v. *Long Island Power Auth.*, 409 F. Supp. 3d 91, 95-96 (E.D.N.Y. 2019) (quoting *Grupo Dataflux* v. *Atlas Glob. Grp., L.P.*, 541 U.S. 567, 570-71 (2004)); *see also Carling* v. *Peters*, No. 10 Civ. 4573 (PAE) (HBP), 2013 WL 865842, at *3 (S.D.N.Y. Mar. 8, 2013) ("It is black-letter law that '[s]atisfaction of the § 1332(a) diversity requirements (amount in controversy and citizenship) is determined as of the date that suit is filed[.]'" (first alteration in original) (quoting *Wolde-Meskel* v. *Vocational Instruction Project Cmty. Servs., Inc.*, 166 F.3d 59, 62 (2d Cir. 1999))).

A court, when considering a motion to dismiss under Rule 12(b)(1), "may refer to evidence outside the pleadings" to determine if subject matter jurisdiction exists. *Makarova*, 201 F.3d at 113; *see also Bates*, 2019 WL 7067092, at *3 (noting that, if a defendant "provided the [c]ourt with information that is extrinsic to the Complaint concerning the citizenship of certain parties," the court could "consider evidence beyond the pleadings"); *see generally Ujka* v. *Mayorkas*, No. 24 Civ. 4801 (KPF), 2025 WL 2419545, at *3 (S.D.N.Y. Aug. 21, 2025) (distinguishing "facial" and "fact-based" Rule 12(b)(1) motions). The court should "not . . . draw[ ] from the pleadings inferences favorable to the party asserting [jurisdiction]." *APWU, AFL-CIO* v. *Potter*, 343

F.3d 619, 623 (2d Cir. 2003) (internal quotation marks omitted) (quoting *Shipping Fin. Servs. Corp.* v. *Drakos*, 140 F.3d 129, 131 (2d Cir. 1998)).  But the court should "accept[ ] all material factual allegations in the complaint as true 'unless contradicted by more specific allegations or documentary evidence.'" *Lawrence Moskowitz CLU Ltd.* v. *ALP, Inc.*, 830 F. App'x 50, 51 (2d Cir. 2020) (summary order) (quoting *Amidax Trading Grp.* v. *S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)).

If the defendant proffers specific evidence, a plaintiff "must come forward with evidence of their own," and may only "rely on the allegations" from the complaint if the defendant's evidence "does not contradict plausible allegations that are themselves sufficient to show" subject matter jurisdiction.  *KMS Ints., Inc.* v. *Starr Surplus Lines Ins. Co.*, No. 21 Civ. 2357 (KPF), 2022 WL 912948, at *3 (S.D.N.Y. Mar. 29, 2022) (internal quotation marks omitted) (quoting *Katz* v. *Donna Karan Co., L.L.C.*, 872 F.3d 114, 119 (2d Cir. 2017)).

### 3.    Diversity Jurisdiction Under 28 U.S.C. § 1332

Given that there is no federal question in this case, the only plausible basis for subject matter jurisdiction is diversity jurisdiction under 28 U.S.C. § 1332.  (*See* Pl. Opp. 8-17).  In relevant part, the diversity statute allows federal courts to exercise jurisdiction over actions between "citizens of a State and citizens or subjects of a foreign state."  28 U.S.C. § 1332(a)(2).[2]

---

[2]    Under § 1332, the "matter in controversy" must also exceed $75,000 for jurisdiction to exist.  28 U.S.C. § 1332(a).  Here it is undisputed that the amount in controversy requirement is met.  (*See, e.g.*, SAC ¶ 99 (asserting that Defendants have failed to return shares of stock valued at over $31 million)).

In the Second Circuit, when both sides of a case have citizens or subjects of a foreign state, and at least one side does not have additional domestic parties, "diversity is lacking." *Universal Licensing Corp.* v. *Paola del Lungo S.p.A.*, 293 F.3d 579, 581 (2d Cir. 2002); *see also Gershowitz* v. *Griv*, No. 24 Civ. 1915 (PAE) (OTW), 2025 WL 2170773, at *3 (S.D.N.Y. July 31, 2025) ("Because there are foreign citizens on both sides of the dispute, no diversity jurisdiction exists."); *accord F5 Capital* v. *Pappas*, 856 F.3d 61, 75 (2d Cir. 2017); *Cortlandt St. Recovery Corp.* v. *Hellas Telecomms., S.à.r.l.*, 790 F.3d 411, 424 (2d Cir. 2015); *Mentor Ins. Co. (U.K.) Ltd.* v. *Brannkasse*, 996 F.2d 506, 512 (2d Cir. 1993); *Corporacion Venezolana de Fomento* v. *Vintero Sales Corp.*, 629 F.2d 786, 790 (2d Cir. 1980).

When determining how to classify an individual under § 1332, two factors are relevant: domicile and national citizenship.[3]  Domicile is "the place where a person has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." *Palazzo ex rel. Delmage* v. *Corio*, 232 F.3d 38, 42 (2d Cir. 2000) (internal quotation marks omitted) (quoting *Linardos* v. *Fortuna*, 157 F.3d 945, 948 (2d Cir. 1998)); *accord RainMakers Partners LLC* v. *NewSpring Cap., LLC*, No. 23-899, 2024 WL

---

The diversity statute also provides jurisdiction over civil actions between "citizens of different States and in which citizens or subjects of a foreign state are additional parties." 28 U.S.C. § 1332(a)(3). That provision is not relevant here because the sole plaintiff in this case is a foreign citizen. (*See* SAC ¶ 3).

[3]    Corporate citizenship for the purposes of § 1332 is determined differently. "[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business[.]" 28 U.S.C. § 1332(c)(1).

1846321, at *2 n.1 (2d Cir. Apr. 29, 2024) (summary order). "Domicile is established initially at birth and is presumed to continue in the same place, absent sufficient evidence of a change." *Corio*, 232 F.3d at 42. To determine an individual's domicile, courts use a "totality of the evidence" approach and look to numerous factors. *Nat'l Artists Mgmt. Co., Inc.* v. *Weaving*, 769 F. Supp. 1224, 1228 (S.D.N.Y. 1991). These factors include — but are not limited to — where political rights are exercised, where taxes are paid, where property or employment is located, and where close family lives. *Id.*

The interaction between domicile and national citizenship is as follows: United States citizens qualify as domestic citizens for purposes of § 1332 even if they have additional foreign citizenship. *See Action S.A.* v. *Marc Rich & Co., Inc.*, 951 F.2d 504, 507 (2d Cir. 1991) ("In matters of diversity jurisdiction American citizenship will determine diversity."). If American nationals are also domiciled in the United States, they are citizens of the state in which they are domiciled. *See Gershowitz*, 2025 WL 2202981, at *2 ("In order to be a citizen of a State within the meaning of the diversity statute, a natural person must both be a citizen of the United States and be domiciled within the State." (internal quotation marks omitted) (quoting *Newman-Green, Inc.* v. *Alfonzo-Larrain*, 490 U.S. 826, 828 (1989))).

By contrast, if American nationals are domiciled outside the United States, they "are neither citizens of any state of the United States nor citizens or subjects of a foreign state" under § 1332. *Herrick Co.*, 251 F.3d at 322 (internal quotation marks omitted) (quoting *Cresswell* v. *Sullivan & Cromwell*,

15

922 F.2d 60, 68 (2d Cir. 1990)).  As such, "§ 1332(a) does not provide that the courts have jurisdiction over a suit to which such persons are parties." *Force* v. *Facebook, Inc.*, 934 F.3d 53, 74 (2d Cir. 2019) (internal quotation marks omitted) (quoting *Cresswell*, 922 F.2d at 68).  Those parties are "necessarily non-diverse." *Jacobs* v. *Patent Enf't Fund, Inc.*, 230 F.3d 565, 567 (2d Cir. 2000) (citing *Cresswell*, 922 F.2d at 68-69).

Individuals who do not have United States citizenship are not considered domestic citizens under § 1332, irrespective of their domicile.  *See Windward Bora LLC* v. *Browne*, 110 F.4th 120, 127 (2d Cir. 2024) (noting that even permanent residents do not have state citizenship for diversity purposes).  In the Second Circuit, even foreign citizens who are permanent residents of the United States qualify as citizens or subjects of a foreign state under § 1332. *Suedrohrbau Saudi Co., Ltd.* v. *Bazzi*, No. 21-2307-cv, 2023 WL 1807717, at *2 (2d Cir. Feb. 8, 2023) (summary order) (citing *Tagger* v. *Strauss Grp. Ltd.*, 951 F.3d 124, 126 (2d Cir. 2020) (per curiam)); *see also Tagger*, 951 F.3d at 127 ("[B]ecause federal courts do not have diversity jurisdiction over lawsuits between two foreign parties, we conclude that section 1332(a)(2) does not give the district court jurisdiction over a suit by a permanent resident against a non-resident alien.").

Combining these principles, the Court observes that if one side of a case has only foreign parties, diversity jurisdiction only exists if individuals on the other side of the case are *both* United States citizens *and* domiciled in the United States.  *See, e.g.*, *Tagger*, 951 F.3d at 126-27; *Universal Licensing Corp.*,

16

293 F.3d at 581; *Cresswell*, 922 F.2d at 68. That is because "the presence of [foreign citizens] on two sides of a case" — at least when domestic citizens are not also on both sides of that case — "destroys diversity jurisdiction." *Bazzi*, 2023 WL 1807717, at *2 (quoting *Vintero Sales Corp.*, 629 F.2d at 790).

**B.    Analysis**

The parties here dispute whether diversity of citizenship exists under § 1332. (*Compare* Sklarov Br. 8-11, *and* Sklarov Reply 2-5, *with* Pl. Opp. 8-17). Plaintiff is a Hong Kong corporation with its principal place of business outside the United States (SAC ¶ 3), which means that it has foreign citizenship for the purposes of diversity jurisdiction, *see, e.g.*, *Feiliks Int'l Logistics Hong Kong Ltd. v. Feiliks Glob. Logistics Corp.*, 685 F. App'x 59, 61 (2d Cir. 2017) (summary order) (deeming Hong Kong corporation a "foreign entit[y]" for purposes of diversity analysis).

As such, if any Defendant also had foreign citizenship under § 1332 on February 8, 2024 — the date Plaintiff filed this action — complete diversity is lacking, and the case must be dismissed. *See United Food & Com. Workers Union*, 30 F.3d at 301. The Legal Services Defendants and the Loan Servicer Defendants do not contest Plaintiff's allegations of domestic domicile. (*See* SAC ¶¶ 6-11; *see generally* Dkt #104, 107 (failing to challenge the Court's subject matter jurisdiction)). Therefore, the Court's subject matter jurisdiction hinges on the Individual Defendants having domestic citizenship under § 1332, which Plaintiff must prove by a preponderance of the evidence. *Bates*, 2019 WL 7067092, at *2; *see also Makarova*, 201 F.3d at 113. As explained herein,

Plaintiff has failed to meet its burden of proving two conditions necessary to establishing diversity jurisdiction in this case.

### 1. Diversity Is Lacking Because Plaintiff Has Not Proven That Ms. Sklarov Is a United States Citizen

*First*, and most clearly, Plaintiff has not proven that Ms. Sklarov is a citizen of the United States. Providing her Ukrainian Passport as support (*see* Dkt. #130-1), Ms. Sklarov asserts that she is "a citizen of Ukraine and three other countries" and, further, that she is "not and ha[s] never been a citizen of the United States" (T. Sklarov Supp. Decl. ¶ 3; *see also* Dkt. #114 ¶¶ 2-3).

Plaintiff has offered no evidence to the contrary. (*Cf.* Pl. Opp. 9-12 (discussing Mr. Sklarov but not Ms. Sklarov); Dkt. #151 ¶¶ 5-34 (same)). In fact, the SAC offers no allegations at all about Ms. Sklarov's citizenship. (*Cf.* SAC ¶¶ 4-5 (providing allegations of Ms. Sklarov's "reside[nce]")). Instead, Plaintiff repeatedly argues that Ms. Sklarov's *domicile* is in the United States. (*See* Pl. Opp. 12-16). But that does not matter if Ms. Sklarov lacks American citizenship, *see Tagger*, 951 F.3d at 126-27, as the evidence suggests is the case. On the record before it, the Court finds that Ms. Sklarov is not a United States citizen and is thus necessarily a "citizen[ ] or subject of a foreign state" for purposes of § 1332. *See Windward Bora LLC*, 110 F.4th at 127; *Tagger*, 951 F.3d at 126-27. Because Plaintiff is also foreign citizen for purposes of § 1332, "diversity is lacking." *Universal Licensing Corp.*, 293 F.3d at 581.

### 2. Diversity Is Lacking Because Plaintiff Has Not Proven That Mr. Sklarov and Ms. Sklarov Are Domiciled in the United States

*Second*, even if Ms. Sklarov were a United States citizen,[4] Plaintiff has failed to meet its burden of proving that both Ms. Sklarov and Mr. Sklarov are domiciled in the United States — another precondition for the Court to exercise diversity jurisdiction.  *See Jacobs*, 230 F.3d at 567 (explaining that American nationals domiciled abroad are "necessarily non-diverse"); *Cresswell*, 922 F.2d at 68 (noting that American nationals domiciled abroad "are neither citizens of any state of the United States nor citizens or subjects of a foreign state" under § 1332); *see also Force*, 934 F.3d at 74-75 ("[A] suit by or against United States citizens domiciled abroad may not be premised on diversity." (quoting *Cresswell*, 922 F.2d at 68)).

To establish that Mr. Sklarov and Ms. Sklarov are domiciled in the United States, Plaintiff must prove either that (i) they live in the United States now and intend to remain, *see Corio*, 232 F.3d at 42, or (ii) the United States was the last place they lived in which they intended to remain, *see id.* (explaining that domicile remains the same until established in a new place). In fact, based on the evidence presented, both Mr. Sklarov and Ms. Sklarov are more likely domiciled in Greece or Ukraine than in the United States.

To begin, the evidence is quite clear that Mr. Sklarov and Ms. Sklarov did not reside in the United States when this case was brought, despite the SAC's allegations otherwise.  (*See* SAC ¶¶ 4-5).  The first hint came when Plaintiff

---

[4]    While Plaintiff has not shown that Ms. Sklarov is a United States citizen, it is undisputed that Mr. Sklarov is.  (*See* V. Sklarov Supp. Decl. ¶ 3).

tried seven times to serve the Individual Defendants at their alleged Georgia address in July 2024, but no one was home. (Dkt. #52 at 4; Dkt. #53 at 4). Mr. Sklarov and Ms. Sklarov then each submitted declarations stating that they live in Greece. (V. Sklarov Supp. Decl. ¶¶ 5-6; T. Sklarov Supp. Decl. ¶¶ 5-6). They provided car registrations in Greece (Dkt. #130-5, 130-6), certificates of attendance showing that their children have attended school in Greece since at least 2019 (Dkt. #130-7, 131-4), and a utility bill for a home in Greece (Dkt. #131-3).

This easily overcomes the scant evidence that Plaintiff offers about Ms. Sklarov's residence, which is simply a bare allegation that she "resid[es]" at the Georgia address or in Illinois. (SAC ¶ 5). Ms. Sklarov has produced "more specific allegations or documentary evidence" of her domicile outside the United States, thereby overcoming Plaintiff's allegations. *Lawrence Moskowitz CLU Ltd.*, 830 F. App'x at 51 (internal quotation marks omitted) (quoting *Amidax Trading Grp.*, 671 F.3d at 145).

The evidence supporting Mr. Sklarov's residence in the United States in 2024 is stronger. Mr. Sklarov identified his residence as the Georgia address in an unrelated English legal proceeding. (SAC ¶ 4 n.1). He executed an affidavit in a 2018 Georgia state court proceeding about his family's living conditions. (*Id.* ¶ 161). He submitted a notarized affidavit to a New York state court in March 2025 indicating his physical presence in New York. (Filardo Supp. Decl. ¶ 8). And, in later proceedings in front of the New York state court, Mr. Sklarov used the Georgia address when he (i) signed a letter to the court

20

(*id.* ¶ 19), and (ii) gave his "[h]ome or business" address, under oath, to the Clerk of Court (*id.* ¶ 21).

That said, the evidence from the Georgia and New York state court proceedings is not as dispositive of Mr. Sklarov's domestic domicile as Plaintiff suggests. The Georgia proceeding took place in 2018 (SAC ¶ 161), six years before Plaintiff filed this case, four years before Mr. Sklarov claimed he had to leave the United States (*see* Filardo Supp. Decl. ¶ 26), and one year before the Individual Defendants' children entered school in Greece (*see* Dkt. #130-7, 131-4). If anything, the Georgia proceeding suggests that Mr. Sklarov may have, at some point, resided in the United States, though not at the time Plaintiff filed the instant action.

In the New York proceeding, while Mr. Sklarov initially indicated his physical presence in New York on a notarized affidavit (Filardo Supp. Decl. ¶ 8), the notary later identified that as a mistake (*id.* ¶ 15), and Mr. Sklarov explained that he was in Europe when the document was notarized (Dkt. #151-8 at 11:18-12:3; *see also* Filardo Supp. Decl. ¶ 17). He further asserted to the state court that he had "not set foot in the United States in several years." (Dkt. #151-9 at 1; *see also* Filardo Supp. Decl. ¶¶ 24-26).

What is more, Mr. Sklarov's use of the Georgia address in the New York proceedings suggests, at most, that he still considers it his business address. (In fact, the Georgia address is listed as the address of one of his businesses in this matter, Loan Servicer Defendant Lviv. (*See* SAC ¶ 10)). While the state court immediately expressed concern when Mr. Sklarov claimed he was out of

the country but then notarized a document in New York (*see* Filardo Supp. Decl. ¶¶ 12, 14, 17), it saw no problem with Mr. Sklarov giving his Georgia address when he was asked for a "[h]ome or business" address or when he used it in a letter (*see* Dkt. #151-8 at 10:7-10:13, 151-9 at 1). That is likely because it had become clear in that proceeding, as it has become clear here, that Mr. Sklarov lives outside the United States. (*See id.* at 10:15-12:3 (discussing Mr. Sklarov's presence in Greece)).

Plaintiff has another way of establishing the Individual Defendants' domicile in the United States: It can argue that the United States was the last place Mr. Sklarov and Ms. Sklarov lived in which they intended to remain. *See Corio*, 232 F.3d at 42. But while Plaintiff has made this argument (*see* Pl. Opp. 14-16), it has not satisfied its burden of proving same.

For starters, Plaintiff has offered little evidence of Ms. Sklarov's presence in the United States at *any* point (*cf.* SAC ¶ 161 (relaying evidence suggesting that Mr. Sklarov lived in Georgia with his family in 2018)), much less her intent to remain (*cf.* Pl. Opp. 14-16 (discussing only Mr. Sklarov's domicile)). For her part, Ms. Sklarov asserts that she has been "domiciled" in Ukraine her "entire life," calling it her "fixed home and principal establishment," and explaining that she does not live there now only due to the country's ongoing conflict with Russia. (T. Sklarov Supp. Decl. ¶¶ 4-5). These "more specific allegations" overcome Plaintiff's bare assertion of domicile. *See Lawrence Moskowitz CLU Ltd.*, 830 F. App'x at 51 (internal quotation marks omitted) (quoting *Amidax Trading Grp.*, 671 F.3d at 145).

The evidence of Mr. Sklarov's prior residence in and intent to return to the United States is stronger, to be sure, but it too is ultimately insufficient. In the English proceeding, which took place around the time Plaintiff commenced this action, Mr. Sklarov stated that he has "lived in the USA most of [his] adult life [and] consider[s] [him]self an American." (SAC ¶ 4 n.1). Furthermore, Mr. Sklarov's goal in the New York proceeding was to return to the United States. (Filardo Supp. Decl. ¶¶ 10-11, 26).

In the instant litigation, Mr. Sklarov asserts that he has been "domiciled in Ukraine . . . since 2011." (V. Sklarov Supp. Decl. ¶ 4). He provides as evidence a Ukrainian Permanent Residence Permit (Dkt. #131-1) and a Ukrainian Taxpayer Identification Number Card, showing a date of registration of May 15, 2015 (Dkt. #131-2). Mr. Sklarov, like Ms. Sklarov, explains that he does not currently live in Ukraine due to the country's ongoing conflict with Russia. (V. Sklarov Supp. Decl. ¶ 5).

Plaintiff argues that Mr. Sklarov's assertions are not enough to prove a *change* in domicile from the United States to either Greece or Ukraine. (Pl. Opp. 14-16). That may be correct. The burden of proving a change in domicile is high. *See Corio*, 232 F.3d at 42. But Plaintiff wrongly suggests that Mr. Sklarov must meet such a burden here. (Pl. Opp. 14-16). Instead, it is Plaintiff who bears the burden of proving Mr. Sklarov's domicile in the United States. *Makarova*, 201 F.3d at 113. Plaintiff fails to meet that burden here.

Plaintiff's best evidence that Mr. Sklarov was at one point domiciled in the United States is his statement in the English proceeding. (*See* SAC ¶ 4

n.1). But before this Court, Mr. Sklarov asserts that he intends to return to Ukraine, and he provides evidence that he has put down roots in both Ukraine and Greece. (V. Sklarov Supp. Decl. ¶¶ 4-6).

Unsurprisingly, Plaintiff urges the Court to discount Mr. Sklarov's statements as self-serving (*see* Pl. Opp. 13-14), and indeed courts in the Second Circuit have discounted a "party's own statements concerning his intentions . . . when they come into conflict with other facts that tend to disclose a contrary intent," *Weaving*, 769 F. Supp. at 1227-28 (internal quotation marks omitted) (quoting *Bevilaqua* v. *Bernstein*, 642 F. Supp. 1072, 1074 (S.D.N.Y. 1986)). But Mr. Sklarov has presented more than just "statements concerning . . . intentions." *Id.* (internal quotation marks omitted) (quoting *Bevilaqua*, 642 F. Supp. at 1074). He has submitted documentary evidence of his ties to Ukraine, including evidence that he pays taxes there, and he has provided a convincing reason why he cannot return there now. (V. Sklarov Supp. Decl. ¶¶ 4-5). In addition, many traditional markers of domicile — location of property and residence of close family, including children, *see Weaving*, 769 F. Supp. at 1228 — point to Greece, rather than the United States, as the current domicile of Mr. Sklarov.

The Court agrees with Plaintiff that these assertions are not enough for Mr. Sklarov to clearly establish his domicile in Ukraine or Greece. (*See* Pl. Opp. 14-16). But the Court also recognizes that the evidence that Mr. Sklarov has provided is "sufficiently powerful to create serious doubts" as to his domicile. *Herrick Co.*, 251 F.3d at 324. "Because the burden of establishing

diversity remains with [Plaintiff]," these doubts are "fatal" to Plaintiff's argument that Mr. Sklarov is domiciled in the United States. *Id.*

### 3. The Court Dismisses the Case Without Prejudice

While the Court finds that Plaintiff failed to satisfy its burden of proving that the Individual Defendants are domiciled in the United States, it does not also find that Mr. Sklarov and Ms. Sklarov are domiciled in Ukraine or Greece. Given the lack of clarity about the Individual Defendants' domiciles, Plaintiff makes the reasonable request that the Court order jurisdictional discovery instead of dismissing the case for lack of subject matter jurisdiction. (Pl. Opp. 16-17). The Court declines to do so, however, because jurisdictional discovery would be futile given the seemingly uncontested view that Ms. Sklarov lacks United States citizenship. (*See* T. Sklarov Supp. Decl. ¶ 3).

The question of whether jurisdictional discovery would be warranted to uncover Mr. Sklarov's domicile — if that were the lone barrier to jurisdiction under § 1332 — is a harder one. As described above, Mr. Sklarov has more documented ties to the United States than Ms. Sklarov. Plus, it is unclear exactly where his domicile is now. And the nature of the alleged scheme demonstrates that Mr. Sklarov is adept at obscuring his identity and whereabouts. (*See* SAC ¶¶ 4, 32, 62-63). But, because even uncontroverted evidence of Mr. Sklarov's domestic domicile would not give the Court jurisdiction over this action, the Court denies Plaintiff's request to order jurisdictional discovery.

The Individual Defendants request that the Court dismiss the case with prejudice. (Sklarov Br. 25-26). As support, they note that "Plaintiff has had two opportunities to amend its complaint." (*Id.* at 25). The Court denies the Individual Defendants' request. Plainly, district courts lack the power to dismiss cases with prejudice if they do not have subject matter jurisdiction to decide them. *Hernandez* v. *Conriv Realty Assocs.*, 182 F.3d 121, 123 (2d Cir. 1999).

But the Court notes that it would deny the Individual Defendants' request even if it had the power to grant it. After all, the Individual Defendants — and not Plaintiff — are the cause for the delay in finding that the Court lacks jurisdiction. The Individual Defendants did not produce concrete evidence of foreign citizenship under § 1332 until they filed their supplemental declarations (*see* T. Sklarov Supp. Decl.; V. Sklarov Supp. Decl.), which was more than seven months after they were served (*see* Dkt. #53-54). In fact, they did not raise subject matter jurisdiction in their pre-motion letter filed on October 10, 2024, or during the pre-motion conference held on October 29, 2024. (*See* Dkt. #74 at 1-2 (discussing personal jurisdiction but not subject matter jurisdiction); Dkt. #121 at 24:22-26:10 (same)). Of course, a court must dismiss a case whenever it realizes it lacks jurisdiction. *See United Food & Com. Workers Union*, 30 F.3d at 301 ("Where jurisdiction is lacking, . . . dismissal is mandatory."). But the Court rejects the Individual Defendants' request to doubly punish Plaintiff here for delay that they themselves caused.

**CONCLUSION**

For the above reasons, the Individual Defendants' motion to dismiss the SAC pursuant to Rule 12(b)(1) is GRANTED.  The SAC is dismissed without prejudice.  The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated:    September 22, 2025
          New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

27